FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal proceeding, defendant Clarence 0. Gibson appeals his conviction and sentence for sexual battery. He contends that the trial court erred in sentencing him based upon findings of fact not reflected in the jury’s verdict or the jury instructions. For the reasons that follow, we affirm the judgment of the trial court.
 

 PROCEDURAL HISTORY
 

 The defendant was charged by bill of indictment with one count of aggravated rape committed “upon known juvenile, D.O.B. 11/07/1998,” a violation of La. R.S. 14:42. After a two-day jury trial, the defendant was found guilty of the lesser included offense of sexual battery, a violation of La. R.S. 14:43.1. The defendant thereafter filed a Motion for New Trial and for
 
 *375
 
 Post-Verdict Judgment of Acquittal. The Motion was denied on March 27, 2009. On April 3, 2009, the trial |scourt sentenced the defendant to a term of imprisonment of twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence. This timely appeal followed. FACTS
 

 On November 9, 2007, Detective Jason Dimarco of the Gretna Police Department responded to a complaint at a Gretna elementary school. When he arrived at the school, Detective Dimarco learned that
 
 “a
 
 young nine year old young [sic] lady there at the school ... [had] disclosed to a teacher that someone was touching her inappropriately.” Danielle, the victim, told Detective Dimarco that the defendant “had [touched her] in a nasty way, and that she had been touched on her private parts.”
 
 [1]
 
 Detective Dimarco interviewed the victim at the school. Detective Dimarco testified that he established that Danielle was nine years old during the interview. Detective Dimarco also learned that the defendant was the boyfriend of Danielle’s mother. The defendant arrived at the school shortly thereafter. After arriving at the school, the defendant asked to speak to Danielle alone. Detective Dimarco denied the request.
 

 Detective Dimarco asked the defendant to accompany him to the police station. The defendant agreed. Detective Dimarco thereafter began to interview the defendant at the Gretna Police station. However, the defendant refused to sign a waiver of rights form, which caused Detective Dimarco to terminate the discussion. Detective Dimarco testified that another Gretna Police officer escorted Danielle’s mother out of the apartment that she shared with the defendant on the evening of November 9, 2007.
 

 ^Detective Dimarco scheduled a forensic interview of the victim by an interviewer from the Jefferson Parish Child Advocacy Center. Erika Dupepe conducted the interview for the Child Advocacy Center.
 
 [2]
 
 After reviewing the results of the interview with the Child Advocacy Center representative, Detective Dimarco obtained an arrest warrant for the defendant. The defendant turned himself in to police voluntarily.
 

 Danielle’s elementary school teacher testified at trial. On November 9, 2007, Danielle told her teacher that “daddy is touching me on the booty, and I know he is not supposed to be doing that.” Danielle’s teacher asked Danielle how long the defendant had been doing that. Danielle replied that the defendant had been “touching her booty” since Hurricane Katrina. Danielle also noted that “today he did something different.” Danielle’s teacher described Danielle as “a little bit distraught.” Danielle’s teacher thereafter took Danielle to the principal’s office. She then informed the principal of her conversation with Danielle. Danielle’s teacher recalled that after the events of November 9, 2007, Danielle transferred to another school.
 

 Adrian Piper-Key is a social worker for the Jefferson Parish Department of Social Services. She interviewed the victim on November 9, 2007. Ms. Piper-Key testi
 
 *376
 
 fied that she found Danielle to be “very credible in what she was telling me” and that she notified Danielle’s mother as to Danielle’s allegations. Ms. Piper-Key interviewed other members of Danielle’s household and thereafter turned the case over to the Jefferson Parish family services unit.
 

 Erika Dupepe testified that at the time of this incident, she was employed by the City of Gretna’s Child Advocacy Center as a forensic interviewer. Ms. Dupepe | .¡interviewed the victim on November 13, 2007. According to Ms. Dupepe, the victim told her that the defendant began abusing her when she was “seven or eight years old.”
 

 Dr. Scott Benton was accepted by the trial court as an expert in the field of pediatric forensic medicine with a subspe-cialty in sexual maltreatment. Dr. Benton interviewed and conducted a comprehensive pediatric physical examination of Danielle on November 26, 2007. Danielle told Dr. Benton that she was nine years old. Dr. Benton testified that the physical exam showed no physical findings of sexual abuse and that Danielle’s hymen was intact. In addition, Dr. Benton found no evidence of any sexually transmitted disease. Dr. Benton testified that the lack of physical evidence does not rule out the possibility of sexual penetration. Dr. Benton additionally testified that the possibility of finding physical evidence in a sexual assault victim decreases greatly after 72 hours. On cross-examination, Dr. Benton admitted that “[t]here is no physical evidence to my knowledge in this case.” The DVD of Dr. Benton’s interview with Danielle was played before the jury.
 

 Sandra, the victim’s mother, testified that she had known the defendant since she was twelve or thirteen. Sandra and the defendant began “courting” when both were about fourteen years old. Sandra testified that she and the defendant had remained in an intermittent romantic relationship thereafter. Sandra began living with the defendant in 2004. Sandra noted that the defendant is the biological father of two of her children. The defendant is not the biological father of Danielle.
 

 After Hurricane Katrina, Sandra evacuated to Mississippi with the defendant and Danielle. Sandra, the defendant, and Danielle spent approximately 8 weeks in Mississippi. Subsequently, they relocated to Baldwin, Louisiana. Sandra, the defendant, and Danielle also spent time in Pasadena, Texas and Jackson, | ^Mississippi. In the latter months of 2005, Sandra and the defendant returned to New Orleans. Danielle remained in Jackson, Mississippi so that she could attend school there. Sandra testified that she and the defendant would visit Danielle every other week. Eventually, Sandra, Danielle, and the defendant settled in an apartment building in Gretna, Louisiana. Sandra’s mother, sister, and sister’s boyfriend lived in the Gretna apartment intermittently in 2007.
 

 On November 9, 2007, Sandra was employed by a gas station in Gretna. She often worked night shifts, leaving the defendant at home with Danielle and her younger sister. Sandra testified that on November 9, 2007, police officers told her to report to Gretna Park Elementary. She complied. When she arrived at the school, Danielle and the defendant were already present. After learning of the nature of Danielle’s accusations, Sandra returned to her apartment, packed her belongings, and moved in with her sister in New Orleans. Sandra testified that she had had no contact with the defendant after November 9, 2007.
 

 Danielle testified at trial. She told the jury that her birthday was October 7, 1998. Danielle testified that “things” started happening to her after Hurricane
 
 *377
 
 Katrina when she was “seven, eight, and nine.” Danielle testified that she had lived in many places after Hurricane Katrina. Danielle was asked if “things [happened] to [her] at some of those places.” Danielle replied: ‘Tes.”
 

 According to Danielle, the defendant would put “his private in my private, and he would put his private in my butt, and he would make me play with his private with my hand, and he would use spit for his private to put in my butt and my private ...” Danielle testified that the defendant placed his “private” on the “inside” and the “outside” of her “private.” Danielle also indicated that the defendant would “lick me on my private” occasionally. Danielle testified that |7“yellow stuff’ came out of the defendants “private” and that the “yellow stuff’ would run down her legs.
 

 Danielle testified that the defendant told her not to tell anybody else what he was doing. Danielle eventually described the defendant’s conduct to her friends and Ms. Bourgeois. Danielle recalled speaking to several additional people about the defendant’s conduct.
 

 Rachel, the defendant’s sister, testified for the defense. Rachel told the jury that she was very close with her brother and Sandra. Rachel confirmed that Sandra, the defendant, and Danielle lived in Mississippi, Texas, and Louisiana immediately after Hurricane Katrina. Rachel often spent time visiting Sandra, Danielle, and the defendant with her fiancée and her three children. Rachel never saw the defendant engage in any inappropriate activity with Danielle.
 

 Tammy testified for the defense. Tammy is another of the defendant’s sisters. Tammy recalled that the defendant, Sandra, and Danielle moved frequently after Hurricane Katrina. Tammy lived with the defendant and Danielle for a time in Pasadena, Texas with numerous other people. Tammy never saw the defendant engage in any inappropriate behavior with Danielle. Tammy also noted that the defendant was a stricter disciplinarian than Sandra.
 

 The defense recalled Sandra to the witness stand. Sandra admitted that Danielle had never mentioned to her that the defendant had touched her inappropriately, even though she described the two as very close. Sandra noted that her sister and her sister’s boyfriend had lived with herself, Danielle, and the defendant periodically after Hurricane Katrina. Sandra testified that neither her sister nor her sister’s boyfriend detected anything unusual while they were living at the Gretna apartment in 2007. Sandra recalled that prior to Danielle’s complaint about the defendant’s sexual misconduct, she received a letter from Danielle’s | ^biological father and that she read the letter aloud to Danielle and the defendant. Sandra could not recall when she received the letter.
 

 The defendant testified that the week before Danielle’s allegations, he watched an adult film with Sandra and that he left the DVD in the apartment. The defendant denied engaging in sexual misconduct with Danielle.
 

 ASSIGNMENT OF ERROR
 

 The defendant contends that the trial court erred in sentencing him in accordance with the penalty provision of La. R.S. 14:43.1 C(2) rather than the penalty provision of La. R.S. 14:48.1 C(l).
 

 La. R.S. 14:43.1 defines sexual battery as:
 

 [T]he intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is
 
 *378
 
 at least three years younger than the offender:
 

 (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
 

 (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
 

 La. R.S. 14.43.1 C(l) states that a person convicted of sexual battery “shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.” However, La. R.S. 14.43.1C(2) states: “Whoever commits the crime of sexual battery on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years.” La. R.S. 14.43.1C(2) additionally provides that at least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
 

 | ¡/The defendant contends, and the state concedes, that the trial court sentenced him under the sentencing provision of La. R.S. 14.43.1 C(2). The defendant argues that the trial court erred in imposing the penalty because neither the jury’s verdict nor the jury instructions referenced the additional age requirements of La. R.S. 14.43.1C(2).
 

 In this case, the jury instructions stated, in pertinent part:
 

 Another lesser but included offense of aggravated rape is sexual battery.
 

 * * *
 

 [I]n order to convict the defendant of sexual battery, you must find:
 

 (1) That there was an intentional engaging in either:
 

 a. The touching of the anus or genitals of the victim by the defendant using any instrumentality or any part of the body of defendant; or
 

 b. The touching of the anus or genitals of the defendant by the victim using any instrumentality or any part of the body of the victim; and
 

 (2) That the act was committed without the consent of the victim; or
 

 (3) That the act was committed with the consent of the victim; and
 

 (4) That the victim was not the spouse of the offender; and
 

 (5) That the victim had not yet attained fifteen (15) years of age and is at least three (3) years younger than Defendant
 

 Pursuant to La. C. Cr. P. art. 814(8.1), the jurors in this case were provided with the following responsive verdicts to aggravated rape:
 

 1) Guilty of Aggravated Rape
 

 2) Guilty of Attempted Aggravated Rape
 

 3) Guilty of Forcible Rape
 

 4) Guilty of Attempted Forcible Rape
 

 5) Guilty of Simple Rape
 

 6) Guilty of Attempted Simple Rape
 

 7) Guilty of Sexual Battery
 

 8) Guilty of Molestation of a Juvenile
 

 9) Guilty of Attempted Molestation of a Juvenile
 

 10) Guilty of Indecent Behavior with a Juvenile
 

 11) Guilty of Attempted Indecent Behavior with a Juvenile
 

 12) Not guilty
 

 The jury returned with a verdict of “guilty of sexual battery.” The jury did not indicate on the verdict form that the defendant was older than seventeen years
 
 *379
 
 of age or that the victim was under the age of thirteen.
 

 110Before beginning our analysis, we must note that the failure to make a contemporaneous objection to jury instructions normally waives review of those jury instructions on appeal.
 
 State v. Lee,
 
 2005-2098 (La.1/16/08) 976 So.2d 109, n. 16 (citing La. C. Cr. P. art. 801(C);
 
 State v. Wessinger,
 
 98-1234 (La.5/28/99), 736 So.2d 162, 181,
 
 cert. denied,
 
 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999),
 
 superseded by statute on other grounds.
 
 However, jury instructions may be reviewed on appeal in spite of the lack of a contemporaneous objection when the alleged error violates a fundamental right.
 
 State v. Ruffins,
 
 41,033 (La.App.2d Cir. 9/20/06), 940 So.2d 45, 52, (citing
 
 State v. Williamson,
 
 389 So.2d 1328 (La.1980) limited by
 
 State v. Thomas,
 
 427 So.2d 428, 435 (La.1982)). In this case, defense counsel made no contemporaneous objection to the jury instructions. In any event, the defendant’s contentions lack merit.
 

 Analysis
 

 In support of his assignment of error, the defendant cites to
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
 

 In
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the petitioner pleaded guilty to a state offense with a sentencing range of five to ten years. However, the trial court imposed a twelve-year sentence pursuant to a hate crime statute that allowed a sentence to be enhanced if the trial judge found by a preponderance of the evidence that the crime was motivated by racial bias.
 
 Id.,
 
 530 U.S. at 470, 120 S.Ct. 2348. The Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
 
 Id.,
 
 530 U.S. at 490, 120 S.Ct. 2348. The Court reversed the judgment of the |nSupreme Court of New Jersey and remanded for further proceedings.
 
 Id.,
 
 530 U.S. at 497, 120 S.Ct. 2348.
 

 In
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the petitioner was sentenced to death after being convicted of capital felony-murder, armed robbery, and related charges. Under then extant Arizona law, after a jury adjudicated that a defendant was guilty of capital felony-murder, the trial judge alone determined the presence or absence of the aggravating factors required by law for imposition of the death penalty.
 
 Id.,
 
 536 U.S. at 592-93, 122 S.Ct. 2428. The Court, citing language from
 
 Apprendi,
 
 stated “[t]he dispositive question, we said, is one not of form, but of effect. If a State makes an increase in a defendant’s authorized punishment contingent on a finding of fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.”
 
 Id.,
 
 536 U.S. at 602, 122 S.Ct. 2428 (citations omitted). The Supreme Court concluded that because “Arizona’s enumerated aggravating factors operate as the functional equivalent of an element of a greater offense, the Sixth Amendment requires that they be found by a jury.”
 
 Id.,
 
 536 U.S. at 609, 122 S.Ct. 2428 (citations omitted). Accordingly, the Court reversed the judgment of the lower court.
 
 Id.
 

 In
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court clarified its previous holdings in
 
 Ring
 
 and
 
 Apprendi.
 
 In
 
 Blakely,
 
 the petitioner pleaded guilty to kidnapping. The facts admitted in the petitioner’s guilty plea supported a maximum sentence of fifty-three months; however, pursuant to state law, the trial court
 
 *380
 
 imposed an “exceptional” sentence of ninety months after making a judicial determination that the defendant acted with “deliberate cruelty.”
 
 Id, 542
 
 U.S. at 300-02, 124 S.Ct. 2531. The Supreme Court considered the holdings in
 
 Apprendi
 
 and
 
 Ring,
 
 recognizing that the facts supporting the sentence enhancement were neither admitted by the defendant | ianor found by a jury. The Court ultimately concluded that “the relevant ‘statutory maximum’ [for the purposes of
 
 Apprendi
 
 ] is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose
 
 without
 
 any additional findings.”
 
 Id,
 
 542 U.S. at 303-04, 124 S.Ct. 2531 (emphasis in the original).
 

 After considering the holdings of
 
 Apprendi, Ring,
 
 and
 
 Blakely,
 
 we conclude that trial court committed an
 
 Apprendi
 
 violation in this case. The relevant “statutory maximum” for a violation of La. R.S. 14.43.1 is ten years imprisonment with or without hard labor; this is the maximum sentence the trial court could have imposed
 
 without
 
 any additional findings. In order to sentence the defendant pursuant to the enhanced sentencing provision of La. R.S. 14.43.1 C(2), a finder of fact must determine that the defendant was seventeen years of age or older and that the victim was under the age of thirteen.' The jury instructions did not reflect that the victim’s and the defendant’s ages are elements of the enhanced sentencing provision of La. R.S. 14.43.1 C(2).
 

 We must conclude that the trial judge determined that the defendant was seventeen years of age or older and that the victim was under the age of thirteen. This result is forbidden by
 
 Apprendi
 
 and its progeny. The state should have explicitly noted in the bill of information that La. R.S. 14.43.1 C(2) was applicable to the defendant given that sexual battery is a lesser included offense of aggravated rape. Moreover, the trial judge should have included a jury instruction reflecting that the defendant’s and the victim’s ages were elements of the enhanced sentencing provision. We note a passage from Cheney C. Joseph, JR. and P. Raymond Lamonica,
 
 Louisiana Criminal Jury Instructions and Procedures Companion Handbook,
 
 § 10.43.1(a) (West 2009), which states with respect to sexual battery:
 

 half the state alleges that the victim was under 13 (and the defendant is 17 or older), these factors should be included in the indictment or in response to a bill of particulars. Because the ages of the victim and the defendant are factors which significantly enhance the maximum sentence for those offenses, the jury must be instructed that these are elements of the enhanced offenses.
 

 The fact that the trial court committed an
 
 Apprendi
 
 violation, however, does not end our analysis. In
 
 Neder v. United States, 527
 
 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the United States Supreme Court held that “a [jury] instruction that omits an element of the offense does not
 
 necessarily
 
 render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence,” and harmless error analysis may be appropriate
 
 Id,
 
 527 U.S. at 8-9, 119 S.Ct. 1827 (emphasis in original). Moreover, the Neder Court found that if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless. Id
 
 .,
 
 527 U.S. at 17, 119 S.Ct. 1827.
 

 In
 
 Washington v. Recuenco,
 
 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), the Supreme Court applied
 
 Neder
 
 to an
 
 Apprendi
 
 violation. The alleged error in
 
 Recuenco
 
 was that the trial court
 
 *381
 
 subjected the defendant to a firearm enhancement at sentencing based solely on the jury’s finding that he was armed with a “deadly weapon.” The State of Washington conceded that the trial court committed an
 
 Apprendi
 
 error.
 
 Id.,
 
 548 U.S. at 212, 126 S.Ct. 2546. The State of Washington argued that the error was harmless, but the Washington Supreme Court determined that the error was a “structural error” requiring a reversal of his conviction.
 
 Id.,
 
 548 U.S. at 216, 126 S.Ct. 2546 (quoting
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). The United States Supreme Court reversed the judgment of the Washington Supreme Court. The United States Supreme Court ultimately |14held that a “[fjailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error” and remains subject to harmless error analysis.
 
 Id.,
 
 548 U.S. at 221, 126 S.Ct. 2546.
 

 Our task, therefore, is to determine whether the trial court’s error in failing to instruct the jury as to the enhanced penalty provision of La. R.S. 14.43.1 C(2) was harmless. During the defendant’s trial, Danielle testified that she was born on October 7, 1998. The bill of information indicated the same. Danielle told Dr. Benton that she was born in 1998. Sandra testified that Danielle was born in 1998. Accordingly, the jury could have concluded that Danielle would have been approximately seven years old when the abuse began in 2005 and nine years old when it ended in 2007.
 

 The defendant did not testify as to his date of birth. However, Sandra testified that she and the defendant began a romantic relationship in 1996. At the time, Sandra and the defendant were both fourteen years old. Sandra additionally testified that she was born on June 26,1981. Thus, both Sandra and the defendant would have been approximately twenty-four years old in 2005 and twenty-six years old in 2007. Furthermore, we note that jury observation can be used to infer the age of a defendant when no direct evidence of defendant’s age is presented.
 
 State v. Day,
 
 98-964 (La.App. 5 Cir. 3/10/99), 735 So.2d 56, 59;
 
 State v. Zihlavsky,
 
 505 So.2d 761 (La.App. 2 Cir.1987),
 
 writ denied,
 
 511 So.2d 1152 (La.1987).
 
 See also Zihlavsky,
 
 505 So.2d at 764-65 (“[tjhere is ... no requirement that the proof of age be established by direct evidence.”). In this case, the defendant’s physical appearance was open to view by the jury.
 

 The evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that the state proved beyond a reasonable doubt that the defendant was seventeen or older and that the victim was 11fiunder the age of thirteen. Even though the trial court clearly committed an
 
 Apprendi
 
 violation, we conclude that the error was harmless.
 
 See Neder,
 
 527 U.S. at 17, 119 S.Ct. 1827.
 

 Accordingly, this assignment of error has no merit.
 

 ERROR PATENT DISCUSSION
 

 In accordance with our usual procedure, we reviewed the record for errors patent. La. C. Cr. P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). We discern two errors patent.
 

 At the conclusion of the sentencing hearing, the trial court advised the defendant that he had 30 days from that date to appeal his conviction and “two years in which they become final to seek request for post-conviction relief.” La. C. Cr. P. art. 930.8 provides “[n]o application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than
 
 *382
 
 two years after the judgment of conviction and sentence has become final” This Court has held on several occasions that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisement incomplete.
 
 See, e.g., State v. Lauff,
 
 06-717 (La.App. 5 Cir. 2/13/07), 958 So.2d 813, 821.
 

 In the past, this Court has ordered the trial court to properly advise the defendant of the prescriptive period under La. C. Cr. P. art. 930.8 by written notice within ten days of the rendition of this Court’s opinion and then to file written proof in the record that the defendant received the notice. Recently, however, in
 
 State v. Davenport,
 
 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445,
 
 writ denied,
 
 2009-158 (La.10/16/09), 19 So.3d 473, this Court rendered a decision that corrected this patent error by way of its opinion.
 

 Following the lead of
 
 Davenport,
 
 we advise the defendant, by this opinion, |mthat no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 and 922.
 
 Davenport,
 
 2 So.3d at 451.
 

 In addition, we note that the trial court failed to properly notify the defendant of Louisiana’s sex offender registration and notification requirements in writing as required by La. R.S. 15:540
 
 et seq.
 

 La. R.S. 15:543(A), as amended, states that the trial court “shall provide written notification to any person convicted of a sex offense and a criminal offense against a victim who is a minor of the registration requirements and the notification requirements of [La. R.S. 15:540
 
 et
 
 seg].” In addition, La. R.S. 15:543(A) states that the trial court shall use the form contained in La. R.S. 15:543.1 to inform the defendant of the registration and notification requirements.
 
 [3]
 

 The Louisiana legislature adopted La. R.S. 15:543.1 in 2007 La. Acts 460; the same bill which extensively amended the sex offender registration and notification statutes. In 2008 La. Acts 816, § 1, the legislature made several amendments to La. R.S. 15:543.1 to reflect changes in the underlying registration requirements. These changes became effective on August 18, 2008. After reviewing the record, we note that the trial court used the notification form in effect before the 2008 amendments. As a result, we must remand this matter to the trial court for the purpose of providing the defendant with appropriate written notice of his sex offender notification and registration requirements.
 
 See, e.g., State v. Scott,
 
 42,997 (La.App. 2 Cir. 2/13/08), 975 So.2d 782. We instruct the trial court to inform the defendant of his notification and registration requirements by using the current form contained in La. R.S. 15:543.1.
 

 CONCLUSION AND DECREE
 

 For the foregoing reasons, the defendant’s conviction and sentence are af
 
 *383
 
 firmed. This matter is remanded to the trial court for the purpose of providing the defendant with appropriate written notice of his sex offender notification and registration requirements. The trial court is instructed to inform the defendant of his notification and registration requirements by using the proper form contained in La. R.S. 15:543.1.
 

 CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . In accordance with La. R.S. 46:1844, the victim and her family members will be referred to by the use of pseudonyms in order to protect their identities.
 
 See also State v. Myles,
 
 04-677 (La.App. 5 Cir. 1/25/05), 894 So.2d 515, 528.
 

 [2]
 

 . Detective Dimarco identified "Erica Sla-kich'' as the Child Advocacy Center employee who interviewed Danielle. We assume that "Erica Slakich” and Erica Dupepe are the same person, as Ms. Dupepe later testified that she interviewed Danielle and a curriculum vitae for "Erica Slakich Dupepe” is contained in the record.
 

 [3]
 

 . The Louisiana legislature adopted La. R.S. 15:543.1 in 2007 La. Acts 460; the same bill wherein the legislature enacted extensive amendments to the sex offender and child predator registration and notification statutes. In 2008 La. Acts 816, § 1, the legislature made several amendments to La. R.S. 15:543.1 to reflect changes in the underlying registration requirements. 2009 La. Acts 205, § 2 repealed La. R.S. 15:543.1(14), which required the offender to "timely sign and return the periodic address verification form sent to them by the Louisiana Bureau of Criminal Identification and Information ... according to the instructions on the verification form.” In the same act, the legislature repealed La. R.S. 15:542.1.6, which required the Louisiana Bureau of Criminal Identification and Information to send sexual offenders and child predators periodic address verification forms.