BROWN, Chief Judge.
11 Following a jury trial, defendant, Claude B. Robinson, was convicted of indecent behavior with a juvenile, T.W. He was subsequently sentenced to 25 years at hard labor, -with credit for time served, the first two years to be served without the benefit of parole, probation, or suspension of sentence. On discharge from incarceration, defendant is to be placed on supervised release for life and must comply with the sex offender registration requirements. Defendant now appeals. For the following reasons, defendant’s conviction and sentence are affirmed.

Facts

On December 9, 2008, a four-count indictment charged the 39-year-old defendant, Claude B. Robinson, with aggravated rape and three counts of molestation of a juvenile, as follows:
Count 1: from 7-22-01 to 7-22-03, he committed the AGGRAVATED RAPE of D.H., b/f, DOB 7-22-91, in violation of R.S. 14:42(A)(4) in that he- had sexual *397 intercourse with her without her lawful consent because she was under the age of 12 at the time;
Count 2: from 1999 to 2007, he, being over the age of 17, committed lewd and lascivious acts upon the person and in the presence of D.H., b/f DOB 7-22-91, there being more than two years age difference between them, with the intent to arouse and gratify his sexual desires and those of the said D.H., by the use of influence by virtue of. a position of supervision and control over said juvenile; Count 3: from 2000 to September 14, 2007, he, being over the age of 17, committed lewd and lascivious acts upon the person and in the presence of E.H., b/f DOB 8-14-89, there being more than two years age differeiice between them, with the intent to arouse and gratify his sexual desires and those of the said E.H., by the use of influence by virtue of a position of supervision and control over said juvenile;
Count 4: from 2004 to August of 2008, he being over the age of 17, committed lewd and lascivious acts upon the person in |?the presence of T.W., b/f DOB 2-1-96, there being more than two years age difference between them, with the intent to arouse and gratify his sexual desires and those of the said T.W., by the use of influence by virtue of a position of supervision and control over said juvenile.
As to count four, a jury found defendant guilty of the responsive charge of indecent behavior with a juvenile, T.W. The jury was deadlocked on the remaining three counts concerning D.H. and E.H., and a mistrial was declared as to those counts. A pre-sentence investigation was ordered, and defendant was sentenced to the maximum term as stated above. Two motions to reconsider sentence were denied. This appeal followed. Defendant urges three assignments of error, namely, sufficiency of the evidence, excessive sentence (error in denying his motions to reconsider), and violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
Sufficiency of the Evidence
Defendant claims that the evidence was insufficient to support a conviction for indecent behavior with a juvenile, T.W. While he concedes that T.W.’s testimony implicates him, he claims that “there is no testimony to describe how [he] allegedly did any of these things nor when [he] did them.” He complains that there is no eyewitness testimony and/or physical evidence to corroborate T.W.’s testimony.
The trial testimony established the following facts. Defendant married Andrea Mastrullo in 2001. He was 33 at the time of the marriage. Defendant and Andrea had known each other since middle school. Andrea had three young children, two boys and a girl, E.H., from a previous | ^marriage, and defendant had one son. The couple was married for seven years and lived in a three bedroom home on Canal Street in Shreveport. At various times, other family members lived with the Robinsons for brief periods of time. Andrea’s mother and niece, T.W., lived with the family for several years. The record indicates that Andrea held several jobs during the years they lived on Canal Street, including a night job from 6 p.m. to 8 a.m. sitting with the mentally handicapped at the Association for Retarded Citizens. Defendant also held steady employment except for a period of time following a work-related automobile accident. Defendant worked during the day and was the primary caretaker of the home and children at night.
D.H. was Andrea’s niece by marriage. D.H. and her two sisters lived across the street from the Robinson family and spent afternoons after school at the Robinson *398 home until her adoptive parents arrived home from work. All three victims on this four-count indictment were cousins.
As for the victim, T.W., defendant was indicted for molestation of a juvenile for the period of 2004 through 2008. Defendant was convicted of the responsive charge of indecent behavior with a juvenile.
LSA R.S. 14:81.2 provides that:
A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
J±---
(1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.
As stated, indecent behavior with a juvenile is a responsive verdict and as pertains here, La. R.S. 14:81 provides that:
A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual' desires of either person:
(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child’s age shall not be a defense;
[[Image here]]
2) Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.
In 2008, Andrea became aware that her daughter, E.H, then 16 years old, was having irregular PAP smears. E.H. underwent a biopsy and tested positive for three sexually transmitted diseases. At this time, E.H. disclosed that defendant had been molesting her since she was 11 years old. E.H., 23 years old at the time of trial in 2013, testified that defendant fondled her breasts, digitally penetrated her vagina and had sexual intercourse with her approximately 50-60 times over the course of six years. The acts took place while her mother was at work and the other children had been sent elsewhere by defendant.
| sOnce E.H. told Andrea about the alleged abuse, Andrea asked her niece, D.H., if defendant had behaved inappropriately with her. D.H. was 17 years old at that time! D.H. began to cry and told Andrea that defendant had been touching her since she was in the fourth grade. D.H., 21 years old at the time of trial, testified that defendant fondled her breasts and vagina and had sexual intercourse with her on numerous occasions. D.H. stated that defendant would send the other children to *399 watch television in a back room or outside to play and would assault her in a bedroom. She testified that she shared this with a counselor at Job Corps and received counseling, but was afraid to tell her family.
Andrea then told one of her sons, Eric, that she and defendant were divorcing. When Eric asked the reason for the divorce, Andrea told him about the abuse of his sister and cousin. Eric then confided in his mother that T.W., also Andrea’s niece by marriage, had told him that defendant had been inappropriately touching her. T.W. was 17 years old at the time of trial and a 4.0 student studying respiratory therapy. She had received a basketball scholarship to study at Baylor University. Her date of birth is February 1, 1996. T.W. testified that she had lived with Shirley Williams, her grandmother and Andrea’s mother, from the time she was 6 months old because her mother had abused her and was addicted to drugs. When she was 8 years old, T.W. and her grandmother moved to Shreveport and into the Robinson home. T.W. and Andrea testified that they moved in with the family because the grandmother was ill with lupus and other related maladies and could no longer care for T.W. or herself. T.W. stated that they | filived with the Rob-insons for four to five years and that defendant watched the kids while Andrea worked evenings and nights. T.W. testified that defendant began touching her private parts when she was 8 years old and it continued until she was 12 years old. Specifically, she testified that he touched her vagina, derriere and anus and kissed her with his tongue. He digitally penetrated her vagina and put his mouth on her vagina, but the two did not have sexual intercourse. She testified that she touched his penis, and he put his penis in her mouth. T.W. could not estimate the number of times all of these acts occurred and, while she was sure the abuse began when she was 8 years old, she could not remember exact dates. T.W. further testified that these acts would happen at the home and in defendant’s ear. T.W. explained that she suffered from asthma and, as a result of breathing treatments, she slept very sound. She stated that she would wake up and her pants would be off and she would know what had happened-that defendant had been in her room. T.W. stated that she would ask him and tell him to stop, but he threatened to hurt her grandmother if she did not comply or if she told anyone.
T.W. also explained that when she would go to Dallas during the summers to visit her biological mother, she did not want to return to Shreveport. She shared this with Eric and he asked why. This exchange took place in front of another child, so T.W. picked up a cell phone, typed on the device’s screen that defendant had been molesting her. T.W. showed the screen to Eric, who also testified at trial and corroborated T.W.’s version of events regarding her disclosure of the abuse to him.
17Finally, T.W. described one incident when defendant was beginning to assault her, and he heard her grandmother rustling and trying to get out of her bed. T.W. testified that the following day, defendant told Andrea that her mother, T.W.’s grandmother, had to leave the home. T.W. and her grandmother moved out of the house and the abuse stopped.
Defendant’s son, Carlos, who was 22 years old at the time of trial, testified for the defense. He testified that he lived with the family on Canal Street. The substance of his testimony was that defendant was not the primary caretaker of the children at the home and that he never -witnessed anything inappropriate between his *400 father and any of the victims. He also stated that Andrea, his stepmother, did not like him and that his father never told him any reason for the divorce.
Mark Wainwright, a longtime neighbor and friend of Robinson’s, also testified on his behalf. He visited often at the home. Wainwright testified that the home was a place where kids gathered, but he never witnessed anything inappropriate at the home.
Defendant’s brother, Dennis Robinson, testified that he and his wife lived with the family from October 2002 to February 2003, and he never witnessed any inappropriate behavior on the part of Robinson toward any of the victims.
Defendant testified on his own behalf. He denied all of the allegations and stated that he had no idea why the girls would conspire to falsely accuse him of these acts. He turned himself in when he became aware of the warrant for his arrest. According to defendant, the only strife 18in the marriage came from raising the children and his period of unemployment due to the accident. He stated that Andrea was worried about paying bills, and they would argue over finances. He stated that she began acting different when her brother stayed with them temporarily. Defendant also testified that it was his decision to have T.W. and Andrea’s mother come to live with them, but that it was not due to illness but because Andrea’s mother could not financially support them. He explained that he rented a trailer and went to get the two and financially supported them thereafter. Defendant testified that the family went to church together and that he never behaved inappropriately with any of the victims.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, writ denied, 09-0725 (12/11/09), 23 So.3d 913.
When viewed in the light most favorable to the prosecution, the evidence was sufficient to support the conviction. T.W. testified that defendant touched her inappropriately from the time she was 8 years old until she was 12 years old. Defendant was 33 years old in 2001 when he married Andrea, and thus, was clearly more than two years older than T.W. T.W.’s testimony established that defendant committed lewd and lascivious acts in her presence and on her person. T.W. testified that he fondled her breasts, buttocks, and anus and penetrated her vagina with his fingers. Defendant kissed her with his tongue, performed oral sex on her and had her perform oral sex on him. T.W. provided explicit testimony of these acts and the various places at which they occurred. Touching the victim’s genitals satisfies the elements of a lewd or lascivious act and the intent to gratify the offender’s or the victim’s sexual desires. State v. Elkins, 48,972 (La.App.2d *401 Cir.04/09/14), 138 So.3d 769, writ denied, 14-0992 (La.12/08/14), 153 So.3d 438, citing State v. Higgins, 03-1980 (La.04/01/05), 898 So.2d 1219. The victim’s testimony alone is sufficient to support a conviction, even absent medical, physical or scientific evidence of the offense. State v. Elkins, supra. Finally, T.W.’s testimony was corroborated in part by the testimony of her cousin, Eric, who told a consistent version of T.W.’s disclosure of the abuse to him wherein she typed the allegation on her cell phone screen and showed it to him. The only evidence to the contrary was defendant’s own self-serving denial.
| inClearly the jury found T.W. to be a credible witness. This young lady overcame the trauma she suffered in her youth to rise to the top of her academic class, excel at sports and receive a scholarship to Baylor University. The credibility call on the part of the jury will not be disturbed on review.
Denial of Defendant’s Motions to Reconsider Sentence
Defendant argues that it was reversible error for the trial court to deny both of his motions to reconsider sentence which were based upon claims that he was sentenced under the wrong version of the statute and that his sentence was constitutionally excessive.
The statute under which defendant was sentenced, La. R.S. 14:81, was amended on August 15, 2006, to increase the penalty for offenders who commit indecent behavior with juveniles under the age of 13. Defendant claims that the state failed to prove that T.W. was under the age of 13 at the time of the statutory amendment. He complains that the jury was not asked to make the factual finding that his victim was under the age of 13.
Prior to amendment on August 15, 2006, the sentencing range for indecent behavior with a juvenile was not more than seven years with or without hard labor and/or a fine of not more than $5,000. La. R.S. 14:81(H)(1). The amendment increased the penalty for offenders over the age of 17 whose victims are less than 13 years of age to 2 to 25 years at hard labor with the first two years to be served without benefits. La. R.S. 14:81(H)(2).
Failure to submit a sentencing factor to the jury is not a structural error and is subject to harmless error analysis. State v. Gibson, 09-486 (La.App. 5th Cir.03/09/10), 38 So.3d 373, writ denied, 10-0802 (La.11/05/10), 50 So.3d 814.
The record supports the sentencing of defendant under the enhanced penalty provision enacted in 2006. The indictment charged defendant with molesting T.W. from 2004 to August of 2008. T.W. was born on February 2,1996, which made her 8 to 12 years of age during the time of this ongoing offense. The statute was amended adding the increased penalty in 2006. No evidence was submitted to the contrary. The trial judge expressly recognized this issue, made the calculations based on the testimony presented to the jury and correctly concluded that the state had presented evidence that T.W. was under the age of 13 during the offense, that the amended statute was in effect when the offense was ongoing and, thus, properly sentenced defendant under the amended penalty provision.
Next, the sentence is not constitutionally excessive. The trial judge reviewed a pre-sentence investigation report and provided extensive and thoughtful consideration of the evidence presented at trial and sentencing factors as set forth in La. C. Cr. P. art. 894.1. The court recognized that defendant had no felony history. Considering all of the evidence presented at trial, the court opined that defendant engaged in “a continuing, uninterrupted, incessant and malicious, sinister period of criminal conduct.” The court found that defendant used his authority as a parental supervisor *402 to facilitate the offenses and that the victim(s) were extremely susceptible and vulnerable due to their youth. He found that Robinson would commit other crimes of a sexual nature if not incarcerated. Further, defendant benefitted J ,afrom the jury finding him guilty of a lesser charge. As charged he faced a penalty of 25 to 99 years.
In light of the sexual depravity exhibited by defendant’s actions on an 8- to 12-year-old child and the continuous and unyielding nature of the abuse, the maximum sentence of 25 years is certainly not a purposeless and needless infliction of pain and suffering, nor is it disproportionate to defendant’s offenses. The sentence does not shock the sense of justice. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).

Apprendi Violation

Somewhat related to his argument regarding the enhahced penalty provision in the previous section, defendant alleges that the trial court violated the mandates of Apprendi, supra. His argument is somewhat misguided, as he suggests that the fact at issue was the date of the amendment rather than the ages of the offender and victim.
Any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Apprendi, supra; Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); see also State v. Gibson, supra, for a thorough discussion of Apprendi and its progeny.
The state must explicitly note in the bill of information that the enhanced sentence provision is applicable to a defendant, and the trial court must include a jury instruction reflecting the ages of the victim and defendant. State v. Gibson, supra. However, a harmless error analysis is applicable in instances where these requirements are not met. Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); State v. Gibson, supra.
The indictment in the present case charged that the molestation of T.W. occurred between 2004 and 2008, that defendant was over the age of 17 and that T.W.’s birthdate was in 1996. Both molestation and indecent behavior carry an enhanced penalty when the victim is under the age of 13. While the written jury charge is not contained in the record, defendant’s own brief concedes that the jury was instructed that he was charged with molestation of a juvenile under the age of 13 and that a responsive verdict was indecent behavior with a juvenile under the age of 13. (Emphasis in defendant’s brief.) As the trial judge noted prior to imposing sentence, while the finding was not contained on the jury verdict form, the jury necessarily found that T.W. was under the age of 13 at the time of the offense in order to return a verdict of guilty. The indictment and jury charge suffices to satisfy Apprendi and its progeny; however, any potential violation was certainly harmless in light of the indictment, admitted language in the jury charge and the testimony of T.W. regarding the years during which the abuse occurred and her age at the time of the ongoing abuse. State v. Gibson, supra.

Conclusion

For the foregoing reasons, defendant’s conviction and sentence are affirmed.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, DREW, and LOLLEY, JJ.
Rehearing denied.