Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,149-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

BOBBY JOE BROWN, JR.                        Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2016F0659

Honorable Bernard Scott Leehy, Judge

* * * * *

LOUISIANA APPELLATE PROJECT             Counsel for Appellant
By:  Douglas Lee Harville

ROBERT STEPHEN TEW                      Counsel for Appellee
District Attorney

KALEE MORGAN MOORE
Assistant District Attorney

* * * * *

Before STONE, COX, and ROBINSON, JJ.

**ROBINSON, J.**

Bobby Joe Brown, Jr. ("Brown"), having been convicted of first degree rape and two counts of sexual battery of his girlfriend's young daughter, appeals his sentences as being excessive. For the following reasons, we affirm his convictions and sentences, and remand with instructions.

**FACTS**

EC, who was born on July 19, 2007, lived with her mother and brother. Brown, her mother's boyfriend, sometimes lived with them.

After EC told her mother that Brown had "peed" in her mouth, the mother called the Monroe Police Department in November of 2012. Three days later, the mother called the police to say that EC had told her that she had lied about what Brown had done to her. The mother added that she did not want anyone to go to jail on bogus charges, and she did not want to pursue the matter any further until she had more time to discuss it with EC. EC would testify at trial that she retracted what she told her mother because she was worried about her mother's safety.

EC was interviewed at the Children's Advocacy Center ("CAC") on December 3, 2012. The CAC only interviews children at the request of law enforcement or of the Department of Children and Family Services ("DCFS"). EC told the interviewer that Brown had touched her vagina several times. Although EC did not tell the interviewer that Brown had put his penis in her mouth, she had told her mother and grandmother about it.

Dr. Meade O'Boyle, an expert in the fields of pediatric medicine and child abuse, examined EC on December 18, 2012. Although there were no physical findings of sexual abuse, she considered her interview of EC to be

significant. EC told Dr. O'Boyle that Brown had stuck his penis in her mouth. She concluded based on the interview that EC had been the victim of child abuse. Brown was never questioned by law enforcement in 2012.

In April of 2014, Brown was in bed with EC and her brother. When the mother removed the covers, she discovered that Brown had several of his fingers inside of EC's pants by her vagina. Brown yanked his hand, jumped out of the bed, and attacked the mother. She was able to call the police upon reaching EC's grandmother's house.

EC was taken to the CAC to be interviewed on April 15, 2014. She told the interviewer that Brown had inserted his fingers in her vagina while they were in bed together and he had his hand down her pants. Her mother saw what was happening when she walked into the room and yanked the covers. EC witnessed Brown put his hands around her mother's throat after her mother confronted him about what had happened.

Following the CAC interview, Investigator Darrell Frost from the Ouachita Parish Sheriff's Office referred the matter to the District Attorney's office for review. Frost did not know at the time that the District Attorney's office sent a slip declining action pending a warrant. Thus, the investigation of Brown for those charges went nowhere and Brown was not questioned about them.

Despite the obvious threat that Brown was to EC, her mother continued her off-and-on relationship with Brown because she was fearful of him. Brown was arrested for crimes related to domestic violence on February 2, 2016. After DCFS took custody of her children, EC's mother learned that EC alleged that she had been raped by Brown. Investigator Frost was the follow-up investigator on the case.

2

EC was interviewed at the CAC on February 8, 2016. EC said that Brown had stuck his finger in her vagina on several instances, with the most recent time being at her mother's house.

EC was examined by Dr. O'Boyle on February 10, 2016. She told Dr. O'Boyle that after she had been awakened by Brown, she ran to a back bedroom and hid under a dresser, but Brown pulled her out and vaginally raped her. Dr. O'Boyle found that EC had an area of inflamed tissue in her vagina. Dr. O'Boyle believed that there had been penetration of EC's vagina by something. She thought that EC's description of what Brown did to her was consistent with her injury. Dr. O'Boyle's impression was that EC had been sexually abused over a prolonged period.

### Indictments

On July 21, 2016, Brown was indicted for one count of first degree rape of EC in violation of La. R.S. 14:42, one count of oral sexual battery of EC in violation of La. R.S. 14:43.3, and two counts of sexual battery of EC in violation of La. R.S. 14:43.1. The rape and one of the sexual batteries were alleged to have occurred between January 1, 2016, and February 8, 2016. The other sexual battery was alleged to have occurred on or around April 11, 2014. The oral sexual battery was alleged to have occurred between July 1, 2012, and November 26, 2012. EC's date of birth was listed in the bill of indictment.

On January 27, 2021, ankle monitoring for home incarceration was ordered for Brown as a bail condition. On June 28, 2021, Brown was advised of his trial date of August 2, 2021. On July 22, 2021, the ankle monitoring service learned that the monitor had been disconnected. The

3

strap for the monitor was later found to have been cut. Brown was discovered in Missouri in October of 2021.

On April 4, 2022, the state amended the bill of indictment to change language concerning the oral sexual battery charge to reflect that the victim's tongue was used on Brown's genitals. The first degree rape count was also amended to state that Brown was charged with aggravated rape in violation of La. R.S. 14:42. We note that the title of La. R.S. 14:42 was changed from aggravated rape to first degree rape by Acts 184 and 256 of 2015. As stated in La. R.S. 14:42(E):

> For all purposes, "aggravated rape" and "first degree rape" mean the offense defined by the provisions of this Section and any reference to the crime of aggravated rape is the same as a reference to the crime of first degree rape. Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as "first degree rape."

A jury trial began on April 4, 2022. Investigator Frost, EC, her mother, the forensic interviewer from the CAC, and Dr. O'Boyle testified on behalf of the prosecution. The videos of the three CAC interviews were played for the jurors. Brown's niece and Brown himself testified for the defense. Brown denied the allegations.

Brown was convicted of first degree rape and of both charges of sexual battery. He was found not guilty of the charge of oral sexual battery. The verdicts were unanimous.

*Sentencing*

A sentencing hearing was held on June 21, 2022. EC gave a victim impact statement in which she stated that Brown had made her feel unworthy. He also caused her to have trust issues and experience anxiety. She blamed Brown for taking away much of her childhood.

4

Before sentencing Brown, the court noted that while Brown was acquitted of oral sexual battery, the court believed that it was more likely than not that the offense had been committed.

The court considered Brown's criminal history to be substantial. Brown pled guilty to DWI in 2006. On April 30, 2006, he was arrested for simple battery, simple criminal damage to property, obstructing public passages, and threatening public officials. He was arrested again three months later for failing to appear on those charges. Brown pled guilty to those charges and was placed on probation, which was later revoked. On March 30, 2007, Brown was arrested for second degree battery, but that charge was dismissed. On September 25, 2007, Brown was arrested for possession of marijuana, possession of drug paraphernalia, and possession of cocaine. He pled guilty to possession of cocaine, was given a three-year hard labor sentence that was suspended, and was placed on probation. On March 5, 2008, Brown was arrested for improper or harassing telephone conversations or communications and for disturbing the peace; he pled guilty to the former. Brown was arrested in 2011 for technical parole violations. On March 28, 2013, Brown was arrested for theft of goods. He pled guilty to unauthorized use of a movable. On October 21, 2013, Brown was arrested for second degree battery, simple battery, and damage to property. He pled guilty to second degree battery and simple battery and was given a suspended six-month sentence and six months of probation. On June 3, 2014, Brown was arrested for violating a protective order. He pled guilty and was given a suspended sentence of 90 days in jail, with one year of probation. On February 2, 2016, Brown was arrested for false imprisonment, aggravated assault, and domestic abuse battery. Those

5

charges remained pending. He was also arrested on February 2 for three counts of violating a protective order. He pled guilty to one count and was sentenced to 120 days in jail with credit for time served.

The court examined Brown's personal history. His parents were married and he is one of seven children. He was expelled from Caldwell Parish High in the 11th grade and never returned. He worked with his father in the oilfield for three years after turning 18. He also worked for logging companies between layoffs in the oil industry. At the time of his 2016 arrest, he worked for Weyerhaeuser outside of Louisiana. Brown began drinking alcohol and smoking marijuana when he was 17. He first used cocaine when he was 21. He began using methamphetamine in 2011. He has one child from a prior relationship but does not maintain a relationship with the child.

The court then analyzed the La. C. Cr. P. art. 894.1 sentencing factors. No mitigating factors were found to be applicable. The court determined that Brown's conduct during the commission of the offenses manifested deliberate cruelty to EC. The court found that Brown knew or should have known that EC was particularly vulnerable or incapable of resistance because of her extreme youth. The court noted that it was clear from EC's victim statement that the abuse had impacted and devastated her in ways that will cause her to have pain, mistrust, and anguish throughout her life. The court concluded that Brown had used his position or status to facilitate the commission of the offense. EC did not have a father figure in her life and Brown became that person. The court found that Brown had abused his position of trust for his own gratification and to the detriment of EC. The abuse resulted in a significant permanent injury to EC and her family. EC

made it clear that the abuse affected her in multiple ways and that its impact remained with her. Brown did not accept responsibility for his actions and had shown no remorse. He stared at EC during sentencing, which led to an admonishment from the court.

The court considered Brown to be the worst of the worst of offenders based on his abuse of EC and his criminal history. The court also noted his abuse of EC was not a continuing transaction that would warrant concurrent sentences, but were separate offenses which occurred over a period.

Brown was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence for his first degree rape conviction. For each sexual battery conviction, he was sentenced to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. The sentences were to be served consecutively. Brown was given credit for time served.

On June 28, 2022, Brown's trial counsel filed a motion to reconsider sentence and a motion for new trial. He complained that the sentences were unduly harsh because they were consecutive. The motions were denied.

Brown has appealed his sentence. His appeal counsel argues that his sentences serve no purpose and are excessive.

## DISCUSSION

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App.

7

2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of art. 894.1, not rigid or mechanical compliance with its provisions. *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. Where the record clearly shows an adequate factual basis for the sentence, remand is unnecessary even where there has not been full compliance with art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Sandifer*, 54,103 (La. App. 2 Cir. 12/15/21), 330 So. 3d 1270.

In sentencing, the important elements which should be considered are the defendant's personal history (age, familial ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Sandifer*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Bell*, *supra*.

Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, *supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496

8

(La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

The punishment for first degree rape is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D). We recognize that La. R.S. 14:42(D)(2) provides a procedure for seeking the death penalty for first degree rape when the victim is under the age of thirteen. However, that provision was declared unconstitutional in *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008).

The punishment for sexual battery is imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years. La. R.S. 14:43.1(C)(1). However, when the victim is under the age of thirteen and the offender is seventeen or older, the punishment for sexual battery is imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:43.1(C)(2).

The trial judge gave thorough consideration to the art. 894.1 factors when imposing the sentences and properly exercised his discretion. Brown had access to EC because of his romantic relationship with her mother, and this access allowed him to victimize a very young EC over a number of years. The sentences are not purposeless. In fact, they are fitting and deserved considering the magnitude of Brown's actions. The trial court also

9

properly determined that consecutive sentences were warranted as Brown's offenses were not part of a single transaction.

***Error patent review***

There is a sentencing enhancement for sexual battery when the victim is under the age of thirteen and the offender is seventeen or older. La. R.S. 14:43.1(C)(2). Brown was sentenced under this provision.

Our review of the record shows that neither the original bill of indictment nor the amended bill of indictment charged Brown with the sentencing enhancement found in La. R.S. 14:43.1(C)(2). The jury was also not instructed for purposes of the sexual battery charges to find that EC was under the age of 13 and that Brown was 17 or older at the time of the sexual batteries in order to support the enhanced sentences.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-3, 147 L. Ed. 2d 435 (2000), the Supreme Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

In *State v. Wagar*, 54,941 (La. App. 2 Cir. 3/1/23), 357 So. 3d 984, the defendant, who was convicted of sexual battery, argued on appeal that the bill of information, jury instructions, and verdict form failed to comply with *Apprendi* because they did not require the jury to find that the victim was under 13 and the defendant was over 17 to support the sentencing enhancement found in La. R.S. 14:43.1(C)(2). This court found that there was clearly an *Apprendi* violation as the prosecution should have explicitly noted in the bill of information and jury instructions that the enhanced sentence provision in La. R.S. 14:43.1(C)(2) was applicable and that the

10

victim was under the age of 13, not 15. However, the error was deemed harmless. *See State v. Gibson*, 09-486 (La. App. 5 Cir. 3/9/10), 38 So. 3d 373, *writ denied*, 10-0802 (La. 11/5/10), 50 So. 3d 814.

This court concluded in *Wagar* that the state proved beyond a reasonable doubt that the victim was under the age of 13 and the defendant was over the age of 17. The bill of information contained the victim's and the defendant's dates of birth. The victim testified about her date of birth and when the abuse occurred. Finally, the jurors could view the defendant and use logic and reasoning to determine his age.

We conclude that any error in this matter regarding the failure to charge the enhanced sentencing provision of La. R.S. 14:43.1(C)(2) or instruct the jury concerning it was harmless error. The original bill of indictment and the amended bill of indictment contain EC's date of birth. EC also testified that her date of birth is July 19, 2007. The jury found Brown guilty of first degree rape, and an element of that crime in this instance is that the victim is under the age of 13. Investigator Frost testified that Brown's date of birth is July 27, 1986.

Upon conviction for first degree rape, Brown was subject to a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D). According to the sentencing hearing transcript, his life sentence was not imposed at hard labor. Because La. R.S. 14:42 is a mandatory felony requiring any sentence to be served at hard labor, the error is harmless and self-correcting.

Brown was convicted of sex offenses as defined by La. R.S. 15:541. The sentencing transcript reflects that while Brown was orally notified by the court that he will be required to register as a sex offender, the record

11

does not include a written notice of the sex offender registration requirements. La. R.S. 15:543 requires that the trial court provide written notice of the registration and notification requirements to a defendant convicted of a sex offense and that an entry be made in the court minutes stating that the written notification was provided to the defendant. *State v. Middleton*, 55,634 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1283, *writ denied*, 24-00822 (La. 2/19/25), 400 So. 3d 926. Accordingly, we remand for the trial court to provide the appropriate written notice to Brown of the sex offender registration requirements for his convictions, for the filing of proof of such written notice in the record of the proceedings, and for the court minutes to be amended to state that such notice was provided.

Finally, the Uniform Sentencing Commitment Order states that Brown was convicted of aggravated rape instead of first degree rape. Accordingly, we additionally remand this matter for the trial court to correct the Uniform Sentencing Commitment Order to state that Brown was convicted of first degree rape.

## CONCLUSION

For the foregoing reasons, Brown's convictions and sentences are affirmed. This matter is remanded to the trial court to correct the Uniform Sentencing Commitment Order, to provide written notice to Brown of the sex offender registration requirements, to file proof of such notice in the record, and to amend the minutes to state that such notice was provided.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS**.