JOAN BERNARD ARMSTRONG, Chief Judge.
I,STATEMENT OF CASE
On September 7, 2006, the State charged Keith Brewer with one count of aggravated burglary. He pled not guilty. On January 24, 2007, a twelve-person jury found Brewer guilty as charged. The court denied his motion for new trial on March 8, 2007. On April 13, 2007, the State filed a multiple bill alleging that Brewer was a fourth offender. After a hearing on June 8, 2007, the court found Brewer guilty on the multiple bill and sentenced him to serve fifty years at hard labor. On July 10, 2007, the court granted Brewer’s motion for appeal. Brewer’s appeal, 2007-KA-1244, was lodged in this court on September 27, 2007. Brewer subsequently moved to file a pro se brief in this matter, and this court sent him the record in order to do so. However, he failed to file a brief.
On November 14, 2007, the State filed a motion to correct an illegal sentence. The trial court heard and denied the motion on February 22, 2008. The court granted the State’s appeal. The State’s appeal, 2008-KA-1037, was lodged in this court on August 11, 2008, and this court consolidated these appeals on August 18, 2008. The State filed its brief on August 28, 2008. To date, counsel for Brewer has not responded to the State’s brief in this matter.

IiFACTS

Officer Cory Foy testified that at approximately 1:30 a.m. on June 14, 2006, he investigated a call of a domestic disturbance in the Algiers section of New Orleans. He testified that when he arrived, he found evidence of a burglary involving a battery. He stated that a back bedroom window had been broken, and the bedroom itself was in what he described as a slight disarray. Officer Foy testified that he spoke with Marvin Johnson, one of the residents of the house, who told him that he was involved in a struggle with the defendant Keith Brewer, who had broken into the house through the window. Officer Foy stated that Johnson told him that Brewer struck him while they struggled in the bedroom. He stated that Johnson also told him that he armed himself with a knife before he confronted Brewer, but Johnson did not remember where he dropped the knife, and Officer Foy indicated that he never saw a knife at the scene. Officer Foy testified that the crime lab personnel lifted some fingerprints from the scene, but he was unsure if these prints were ever matched to anyone. Although Officer Foy acknowledged that there was no indication in the police report that Brewer punched Johnson, the report included the information that Brewer committed a battery on Johnson after entering the house. Officer Foy testified that after speaking with Johnson and his niece Dawn Lindsey, he obtained an arrest warrant for Brewer, who was eventually arrested pursuant to the warrant.
Melvin Johnson testified that he knew Brewer through his niece Dawn, who had dated Brewer and had a daughter with him. Johnson testified that on the date of the burglary he was living at 460 Homestead Street with Dawn and her three children, including Sarah, her daughter with Brewer. He stated that on the night of Lthe present offense, he, Dawn, her children, and her boyfriend were present at the house, and he had retired for the night. He testified that he was awakened by Sarah, who told him that Brewer was at her window, trying to open it. Johnson testified that he went into the kitchen and *1153 grabbed a knife, and then he went into Sarah’s room. He testified that he saw nothing out her window, but he heard a window break in the next bedroom, which belonged to Sarah’s brothers. Johnson testified that he opened the door to the boys’ room and saw a person standing in the room. He testified that the man was holding a lighter, and after three tries he successfully lit it. At that point, he saw that the man was Brewer.
Johnson testified that he swung the door open fully, hitting Brewer, who dropped the lighter. He testified that Brewer swung at him and hit him, and they fought each other inside the room. Johnson testified that Brewer fell to the floor, and Johnson ran to the door, yelling to Dawn to call the police. He testified that he returned to Brewer, and they continued fighting. He testified that after a chest of drawers fell over, he again went to the door and yelled to Dawn to call the police. Johnson stated that Brewer got up and went toward the window, and Johnson grabbed him. At that point, Dawn entered the room and turned on the light. Johnson testified that Brewer then began kicking him in the chest. Brewer broke away and escaped through the window. Johnson testified that during the fight, he thought that he had stabbed Brewer. He stated that he followed Brewer out the window and chased him, but Brewer jumped a fence and got away. Johnson testified that he got in his car and drove around the neighborhood, but he could not find Brewer.
Johnson estimated that Brewer was in the house ten minutes, and during that time he kicked Johnson in the chest. Johnson testified that he had known Brewer l4for years because Brewer had dated Dawn. He also testified that Brewer had come into the house two days before this incident, and on that visit Brewer had “gotten into [Johnson’s] face” and told him he wanted to fight. Johnson testified that he told Brewer to leave or he would call the police. Johnson admitted that he had prior convictions for aggravated battery and aggravated rape.
On cross-examination, Johnson testified that he had temporary custody of Sarah, and Brewer had accused him at some point of failing to make sure that Sarah was in the proper grade at school. He testified that Sarah had been sick with gallstones. He denied seeing Dawn help Brewer with any paperwork, although he remembered Brewer showing her some paperwork some time before this incident. He testified that he heard while he was at work that Brewer had spent the night at the residence, and he called Dawn to tell her to make Brewer leave. He testified that at one point, Brewer told him that he would kill Sarah or have her killed. On redirect, he stated that he did not give Brewer consent to break the window and enter the house on the night of this incident.
Sarah Johnson testified that she is Dawn’s and Brewer’s daughter. She testified that on June 14, 2006, she was just falling asleep when she heard tapping on her window and heard someone call her name. She testified that she looked out the window and saw Brewer. She testified that she went to Johnson’s room and told him that Brewer was outside her window. She stated that Johnson told her to wait in his room, and he went to confront Brewer. Sarah testified that she saw him go into her brothers’ room, and she heard Johnson and Brewer fighting. She testified that her mother came out of her room to see what was happening, and her mother turned on the light in her brothers’ bedroom. She testified that she saw Brewer swing at Johnson, and then Brewer fled out the window.
*1154 IsSarah testified about an incident that occurred a month before the burglary. She stated that Brewer appeared at the door as she was leaving for school. She testified that as she was entering a van to go to school, she saw Brewer enter the house. She testified that her cousin Brandon was with her and told her to wait in the van. She stated that she then saw Brewer come out of the house, followed by her mother, who told Brandon to catch Brewer. Sarah testified that Brandon apprehended Brewer and held him until the police arrived. She testified that she and Brewer were closer when she was small, but then Brewer went to jail. She testified that Johnson treated her like a daughter. Sarah stated that she and Brewer spent time together before he went to jail on the present charge.
Dawn Lindsey testified that Brewer is the father of her daughter Sarah. She testified that she first met Brewer in the Fisher Housing Project in 1990 when she was thirteen years old and he was twenty-five years old, and they dated for a time. She stated that her parents disapproved and forbade her to see Brewer, but she continued to do so. She testified that she soon became pregnant, and her parents insisted that she avoid him. She maintained that after she told him that she could not see him any more, Brewer hit her in the back of her head. She testified that sometime after Sarah was born, she ran into Brewer and told him that she could not talk to him. In response, he grabbed her arm and broke it. Dawn said that later, as she was leaving school, Brewer approached her and caused a commotion when she told him to leave her alone. Dawn stated that in 1997, when she was living in an upstairs apartment, Brewer came to the building and tried to break in, but he was caught by her landlord, who called the police. She stated that Brewer had gone by the time the police arrived.
IfiDawn testified that a month before the present incident in 2006, she had a death in the family. She said that she went to pick up her mother and her grandmother to take them to a funeral home, and Brewer called her on her father’s cell phone, which she had with her. She testified that Brewer told her he had gotten the phone number from the Red Cross, and he stated that he wanted to see her. Dawn stated that Brewer told her that he had changed, but she told him she was with another man and that there was no relationship left between her and Brewer. She testified that Brewer told her that he had gotten a settlement since his release from jail and needed her help in filling out paperwork in connection with it. Dawn stated that she allowed Brewer to come to her house because she had a computer and a fax machine. She said that Brewer arrived at the house when she was not there. She denied that he spent the night. Dawn stated that the next morning, Brewer appeared just after Sarah left for school, and he grabbed her around the throat and told her that he wanted to tell her what had happened. She testified that she replied that she could not talk to him while he was choking her. She testified that she knew that her cousin, Brandon, was in the house, and she screamed for him. She testified that Brandon wrestled with Brewer, and she called the police, who soon arrived and arrested Brewer. She maintained that when arrested, Brewer told her that he would kill her when he got out of jail.
Dawn testified that on the night of the present offense, she heard screaming and heard Johnson yell for her to call the police. She testified that she went to the door to her sons’ bedroom and flipped on the light. She asserted that she saw Johnson and Brewer fighting, and then she saw Brewer jump out the window. She estimated that it took the police forty-five *1155 minutes to respond, by which time Brewer was gone. Dawn denied giving Brewer permission to enter the house.
|7On cross-examination, Dawn testified that sometime in May 2006 Brewer went with her to pick up Sarah from school. She stated that when Brewer came to her house to complete his paperwork, he created a commotion, and they never got to the paperwork. She alleged that Brewer came to the house several times when she was at work. She testified that she did not hear Brewer say anything on the night of the present incident. She stated that she did not go to court for the choking incident that occurred about a month before this incident, and she did not require medical attention at that time.
Out of the jury’s presence, Brewer rejected a plea agreement. He also indicated that he did not want to testify in his own behalf.
The defense rested without calling any witnesses.

DISCUSSION AND RECOMMENDATION

A. Errors Patent

A review of the record reveals no patent errors.

B. Assignment of Error by Brewer (2007-KA-12U)

By his sole assignment of error, the defendant contends that the evidence was insufficient to support his conviction. The jury found him guilty as charged of aggravated burglary. He argues that the evidence failed to show that he committed a battery after entering the residence; at best, his actions were committed in self-defense when Johnson attacked him. He also argues that the evidence did not show an intent to commit a felony or theft once he entered.
|sThe Louisiana Supreme Court set forth the standard for evaluating a claim of insufficient evidence in State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674, (La.6/29/01)[,] 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
See also State v. Batiste, 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810; State v. Sykes, 2004-1199 (La.App. 4 Cir. 3/9/05), 900 So.2d 156.
The defendant was convicted of aggravated burglary, which is defined by La. R.S. 14:60 in pertinent part as “the unauthorized entering of any inhabited dwelling ... with the intent to commit a felony or any theft therein, if the offender ... (3) Commits a battery upon any person while in such place, or in entering or leaving *1156 such place.” See State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457. The defendant admits his entry into the residence was unauthorized. He first argues, however, that there was insufficient evidence of his committing a battery. Battery is defined by La. R.S. 14:33 as “the intentional use of force or violence upon the person of another.” The defendant acknowledges that there was |flevidence that he at least hit Johnson, but he maintains that he did so only in self-defense in that Johnson hit him first, and Johnson admitted that he was armed with a knife as he struggled with the defendant. He cites no cases, however, that hold that a battery is not a battery for purposes of La. R.S. 14:60 if it is committed while the intruder is defending himself from an attack by the resident of the house into which he has entered without authority. In addition, as noted by the State, Johnson testified that he knocked the door into the defendant when he discovered him inside the boys’ bedroom, and the defendant retaliated by punching him. Johnson testified that the defendant repeatedly hit and kicked him during the defendant’s attempt to flee out the window after he had been discovered in the bedroom. Thus, the State proved that the defendant entered the house without authority and committed a battery after entering.
The defendant also contends that the evidence did not show that he entered the house with the intent to commit a felony or theft. As noted in Francis, id. at p. 5, 715 So.2d at 461:
Intent is a question of fact, but it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983); State v. Robinson, 29488, p. 3 (La.App. 2d Cir.6/18/97), 697 So.2d 607, 609, writ denied, 97-1845 (La.12/12/97), 704 So.2d 1200. For example, a defendant’s flight from the scene of a crime indicates consciousness of guilt. That is a circumstance from which guilt may be inferred. State v. Bell, 581 So.2d 384, 386 (La.App. 4 Cir.1991).
In Francis, the defendant, who was the victim’s ex-boyfriend, broke down the victim’s door, entered her house, ripped out her phone wires, and hit her several times in the head. The police caught the defendant as he chased the victim out of the house. On appeal of his aggravated burglary conviction, the defendant argued Imthat the State failed to show that he intended to commit a felony or theft after entering. This court rejected this argument, noting that the victim testified that she had moved to a women’s shelter to avoid the defendant and had only recently returned to her house. This court found that the evidence of the defendant’s entry and beating was circumstantial evidence of his intent, stating: “The fact that Ms. Wells was able to escape before she was hurt more seriously is of no moment.” Francis at p. 5, 715 So.2d at 461.
The defendant argues that at most, the evidence showed that he entered the house only to speak with Dawn and Sarah. He points to the fact that he was not armed when he entered to show that he intended only to speak with his daughter and his ex-lover. However, the fact that he did not have a weapon does not automatically discount any intent to commit a felony by harming Dawn or Sarah; indeed, Sarah testified that she saw the defendant go into her house a month before the present offense, and when he left her mother and her cousin were chasing him. Dawn testified that during that visit the defendant grabbed her around her throat and tried to choke her. Dawn testified that as the police led the defendant away after that incident, the defendant threatened to kill her when he was released. Dawn also *1157 recounted several incidents during the previous fifteen years where the defendant either physically accosted her or threatened her. In addition, Johnson testified that he heard the defendant threaten to kill Sarah or have her killed. Given these circumstances, the jury could have found that the evidence circumstantially showed that the defendant entered the residence with the intent to commit a felony. As in Francis, the fact that Johnson fought with him and deterred him from further action is of no moment. Thus, the evidence was sufficient to support the jury’s In verdict that the defendant was guilty of aggravated burglary beyond a reasonable doubt. Accordingly, we find the defendant’s assignment of error lacks merit.

C. The State’s Assignment of Error (2008-KA-l037)

By the State’s sole assignment of error, it contends that the trial court erred by denying its motion to correct an illegal sentence. It argues that the defendant is a fourth offender, and because the present offense is a crime of violence and two of his prior offenses falls within the guidelines of La. R.S. 15:529.1 A(l)(c)(ii), he could only have received a life sentence. The court denied the motion, affirming the fifty-year sentence it originally imposed as a fourth offender. The State now argues that the trial court erred by so ruling.
La. R.S. 15:529.1 A(l)(c)(ii) provides:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children’s Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
⅜ ⅝ ⅜
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
* * *
|12(ii) If the fourth felony and two of the ‘prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:54-0 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence, (emphasis added)
At the June 8, 2007, multiple bill hearing, the court noted that the defendant’s present offense, aggravated burglary, was a crime of violence. His prior offenses were for sexual battery[1] in 2001, molesta *1158 tion of a juvenile in 1992, and unauthorized entry of an inhabited dwelling in 1990. The State agreed with the trial court that molestation of a juvenile did not fit within the definition of a crime of violence. The court then found that the mandatory life provisions of La. R.S. 15:529.1 did not apply, and it imposed a fifty-year sentence. It was not until November 14, 2007, over five months later, that the State filed its motion to correct an illegal sentence. However, if the sentence was indeed illegally lenient, the State’s motion was not untimely because La.C.Cr.P. art. 882 provides that an illegal sentence may be corrected at any time. The trial court nonetheless denied the State’s motion on February 22, 2008, without reasons.
On appeal, the State notes that the defendant’s present offense, his fourth offense, is aggravated burglary, which is defined by La. R.S. 14:2 B(20) as a crime of violence, and his prior conviction for sexual battery is also a crime of violence as per La. R.S. 14:2 B(12). It further argues that La. R.S. 15:529.1 A(l)(c)(ii) refers |13to a sex offense as defined in La. R.S. 15:540 et seq., the sex offender registry provisions, and section 541(9)(b) includes molestation of a juvenile (La. R.S. 14:82.1) as a criminal offense against a victim who is a minor. The State acknowledges that it and the court failed to consider that sexual battery is a crime of violence. Thus, it argues that a life sentence is mandatory in this case.
Based on the foregoing, we find that the State is correct in its argument and that the sentence that the court should have imposed was a mandatory life sentence, barring any finding that a life sentence would be excessive under State v. Dorthey, 623 So.2d 1276 (La.1993). Because the trial court denied the motion to correct the sentence, it did not reach the issue of whether a life sentence would be unconstitutionally excessive as applied to the defendant, nor was the defendant given the opportunity to show why a life sentence might be excessive as applied to him. However, given the status of the defendant’s present and two of his prior offenses, he falls within the mandatory life provisions of La. R.S. 15:529.1 A(l)(c)(ii). Consequently, the trial court erred by denying the State’s motion to correct the illegal sentence. The State’s claim has merit.
Accordingly, we affirm the defendant’s conviction and adjudication as a fourth offender, vacate the fifty-year sentence, and remand the case for re-sentencing under La. R.S. 15:529.1 A(l)(c)(ii).
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
BONIN, J., concurs with reasons.

. Although the trial court listed this offense as a molestation of a juvenile, the minute entry from this offense, contained in the record of *1158 2008-KA-1037, indicates that the defendant pled guilty to sexual battery.