MOORE, J.
Following a jury trial, Allen Richard Roth Jr. was convicted as charged of molestation of a juvenile. The court sentenced Roth to 30 years at hard labor with the first 25 years to be served without the benefit of probation, parole or suspension of sentence. This appeal followed. We affirm.
FACTS
When the victim, H.M., was 17 years old, she told her mother (hereinafter "K.W.") that her "Uncle Butch" had touched her vagina and breasts beginning when she was in the first grade. K.W. arranged for her daughter to speak to a counselor. A week later, H.M. reported the sexual abuse to the Caddo Parish Sheriff's Office and an investigation ensued.
Roth gave a statement to police, admitting that he massaged H.M. late at night when she slept over at his home, beginning when she was eight or nine years old. According to Roth, H.M. would lift up her shirt and he would massage her back and legs. He further stated that once while he was giving H.M. a massage, she grabbed his penis with her hand and squeezed it for about a minute; she was about 11 or 13 years old at the time. When pressed further, Roth admitted that H.M. grabbed his penis on three separate occasions, but stated that he always pulled away after about a minute. He also recalled that when H.M. was around 13 and he was giving her a massage, she asked him to stop; he stopped and told her that she was "in control"; he never touched her again. During the interview, Roth repeatedly denied touching H.M.'s vagina or breasts, but admitted that he might have come close to her vagina while massaging her legs.
On May 19, 2014, Roth was charged by bill of information with one count of molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2(E)(1). The bill specifically alleged that the offense occurred "between 2003 and February 23, 2010." On July 15, 2016, the bill was amended to list the current prosecuting district attorney and to correct an error in the citation of La. R.S. 14:81.2. Roth *1235 waived arraignment and pled not guilty to the charge.
On July 16, 2016, trial by jury commenced. K.W., the victim's mother, testified that she knew Roth from high school; he married her twin sister, Carol. As a nurse, K.W. was required to work 12-hour shifts on weekends twice a month. On those weekends, H.M. stayed with her Aunt Carol and Uncle Butch in their home and sometimes spent the night. When H.M. was 12 years old, K.W. no longer had to work weekends and H.M. stopped going over to her Aunt Carol and Uncle Butch's house. Regarding the molestation, K.W. testified that H.M. told her that Roth began touching her inappropriately in first grade and stopped when she was in sixth grade.
H.M. testified that Roth began touching her breasts and vagina when she was seven or eight years old. She recalled that the incidents occurred in various places such as in a hot tub, in the living room and in Roth's office at their home. When she spent the night at his house, she slept on the couch in the living room. He would begin by massaging H.M.'s shoulders, but move his hands to her breasts and then her vagina. The contact was skin on skin. She said Roth grabbed her hand and made her hold his penis; he also showed her pornographic videos on his office computer. Roth told H.M. not to tell her Aunt Carol about the sexual encounters.
H.M. testified that when she was 13 or 14 years old, Roth was touching her inappropriately, and she told him, "don't ever touch me again." He stopped, told her that she was "in control," and left the room. H.M. could not recall the exact number of times Roth touched her in a sexual way, but said it occurred "almost every time [she] spent the night" at his house.
Carol Roth, the defendant's wife, testified that she began babysitting H.M. when K.W. started working weekends. Carol explained that Roth would sometimes be alone with H.M., and that once, when H.M. was about nine or ten, she came home from an errand and saw him massaging H.M.'s shoulders in the kitchen. Carol told him later that the massage was inappropriate, but never suspected that he was sexually abusing her niece.
Following a two-day trial, a unanimous jury convicted Roth as charged of molestation of a juvenile under the age of 13.
Roth filed several post-verdict motions based on alleged anomalies that he contends arise from two amendments to La. R.S. 14:81.2 enacted during the seven-year period that he was charged with committing the acts of molestation. These amendments increased the "minimum to maximum" penalty range for the offense: for the period from 2003 to August 14, 2006, the sentencing range was from "1 to 15 years"; for the period from August 15, 2006, to August 14, 2008, the sentencing range was "25 years to life" imprisonment; and, for the period following August 15, 2008, "25 years to 99 years." Roth filed a "Motion to Impose Sentence Pursuant to the Provisions of Louisiana Revised Statute 14:81.2B (2003), and, In the Alternative, Motion to Arrest Judgment and In the Alternative, Motion for New Trial," alleging that his conviction was obtained in violation of Apprendi v. New Jersey , 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the jury was not instructed to determine when the molestation of H.M. occurred and thereby, Roth argues, to determine which version of La. R.S. 14:81.2 applied to him for sentencing purposes. He further argued that the bill of information was "duplicitous" because the state alleged multiple acts of molestation at trial, but charged him with only one count in the bill. He also argued that the trial court *1236 erred by allowing the state to elicit testimony from Sergeant James Moore, who interviewed him, regarding the defendant's credibility during his statement. Lastly, Roth argued that the trial court erred by denying his request to continue the trial and allow substitution of trial counsel.
Following a hearing on June 29, 2017, the trial court denied Roth's post-verdict motions and imposed sentence. Stating that it had concluded that the applicable version of the statute was the one in effect from 2006 to 2008, the court sentenced him to 30 years at hard labor, with the first 25 years to be served without the benefit of probation, parole or suspension of sentence.[1] Additionally, at the request of the state, the trial court designated the offense as a crime of violence.
Roth filed a "Motion to Correct Illegal Sentence and Motion to Reconsider Sentence on the Grounds of Excessiveness" arguing that his sentence was illegal due to the alleged Apprendi violation, or, alternatively, that his sentence was excessive given the facts of the case. After a hearing, the court denied the motion.
This appeal followed.
DISCUSSION
The defense argues that "virtually all the errors infecting this case" arose from the prosecutor's decision to charge in the bill of information one count of molestation of H.M. occurring during a seven-year period and then utilizing a trial strategy of presenting evidence of several incidents of molestation occurring at times during the seven-year period, but never designating which particular incident constituted the single count of the offense charged or requiring the jury to do so. This is problematic, Roth argues, because during that same seven-year period of the molestations, the sentencing provisions of the statute were amended twice, each increasing the punishment for the offense. Thus, without knowing which offense of molestation for which the jury convicted the defendant and when it happened, it is impossible to ascertain the appropriate penalty provision of the statute.
Thus, in his first assignment of error, Roth argues that the trial court erred by denying his motion for a new trial based on grounds that the bill of information was duplicitous in that it alleged a seven-year period of sexual abuse instead of listing a specific offense of molestation. The effect of charging one count of molestation over a seven-year period, he argues, was to permit the state to present evidence at trial of other offenses or incidents of molestation. Additionally, because the court utilized the second amended version of the statute which required a greater penalty than the 2003 version, Roth alleges that the conviction was obtained in violation of Apprendi , supra , and its progeny, because the jury was not required to specify when the specific act of molestation occurred that would support the verdict requiring the greater penalty. While Roth concedes that the date of the crime is generally not an "element" of the offense that must be submitted to the jury, in this instance, the date was necessary because of the two legislative amendments enacted during the time period he was charged for committing one count of molestation. Ordinarily, the penalty in effect at the time of the offense applies to an accused convicted of the offense. Accordingly, he argues, the jury should have been instructed to determine the date of the offense.
We note at the outset that the court stated its intent to apply the 2006 amended *1237 version of R.S. 14:81.2, but inadvertently recited the sentencing range of the 2008 amended version, i.e., 25 years to 99 years.[2] The only difference between the two versions is that the latter version's maximum sentence is 99 years, while the earlier (2006) version's maximum is life imprisonment. Both statutes impose the same minimum of 25 years, with the first 25 years to be served without benefits. Because the jury was not required to specify the date of the offense, Roth contends that the trial court erred when it sentenced him under the harsher 2008 amended version of R.S. 14:81.2 due to errors arising from duplicity and Apprendi, supra , discussed above. He further maintains that the rule of lenity requires that he should be sentenced under the most lenient version of R.S. 14:81.2 in effect prior to 2008. Of course, this would be the pre-2006 version which had a penalty range of 1 to 15 years.
The state urges that Roth did not object to the bill of information during the trial, and generally the failure to object constitutes a waiver of the right. Nevertheless, the state maintains that he was not entitled to a new trial on the merits. It contends that the record supports the sentencing range in effect during the period of 2006-2008, when the molestation occurred with the greatest frequency, but also before and after that period. The state also argues that this Court has held that "[t]he date and time of the offense of a molestation of a juvenile are not essential elements of the offense." State v. Robinson , 51,830 (La. App. 2 Cir. 2/28/18), 246 So.3d 725 ; State v. Dale , 50,195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, writ denied , 15-2291 (La. 4/4/16), 190 So.3d 1203.
The trial record shows that H.M. testified that Roth began molesting her when she was seven or eight and stopped when she was 13 or 14. He admitted in his statement to police that sexual encounters with H.M. occurred when H.M. was 11 or 13. H.M. turned seven on February 25, 2004, and 14 on February 25, 2011. The bill of information alleged that the molestation occurred "on or about BETWEEN 2003 AND FEBRUARY 23, 2010." The bill listed H.M.'s date of birth as February 23, 1997.
The jury was instructed to determine whether the defendant was guilty of molestation of a juvenile under the age of 13 and included H.M.'s date of birth. It returned a verdict of "guilty" of "molestation of a juvenile under the age of thirteen."
A motion for new trial raises, among other things, the claim that the court ruling on an objection showed prejudicial error, or that the ends of justice would be served by granting a new trial. La. C. Cr. P. art. 851. The decision on a motion for new trial rests within the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing *1238 of abuse. State v. Horne , 28,327 (La. App. 2 Cir. 8/21/96), 679 So.2d 953, writ denied , 96-2345 (La. 2/21/97), 688 So.2d 521.
The failure to make a contemporaneous objection to jury instructions normally waives review of those jury instructions on appeal. La. C. Cr. P. art. 801(C) ; State v. Lee , 2005-2098 (La. 1/16/08), 976 So.2d 109, cert. denied , 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008). However, jury instructions may be reviewed on appeal even without a contemporaneous objection when the alleged error violates a fundamental right. State v. Gibson , 09-486 (La. App. 5 Cir. 3/9/10), 38 So.3d 373, writ denied , 2010-0802 (La. 11/5/10), 50 So.3d 814.
In Apprendi , supra , the U.S. Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. , 530 U.S. at 490, 120 S.Ct. at 2362-2363.
However, in Neder v. United States , 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the U.S. Supreme Court further held that "a [jury] instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Further, "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." Id. , 527 U.S. at 17, 119 S.Ct. at 1837.
As previously stated, prior to August 15, 2006, the crime of molestation of a juvenile was punishable by a fine of up to $5,000 and/or imprisonment with or without hard labor for not less than one, nor more than 10 years. La. R.S. 14:81.2. If the offense was committed when the offender exercised control or supervision over the juvenile the penalty increased to a fine of up to $10,000 and/or imprisonment with or without hard labor for not less than one, nor more than 15 years. Id. Notably, the version of R.S. 14:81.2 in effect until August 15, 2006, did not contain a provision for a harsher sentence when the victim was under the age of 13 at the time of the offense.
Effective August 15, 2006, R.S. 14:81.2 was amended to add Subsection (E)(1), which provided a sentence of imprisonment for not less than 25 years, nor more than life imprisonment, with at least the first 25 years to be served without the benefit of probation, parole, or suspension of sentence when the victim was under the age of 13 at the time of the offense.
Effective August 15, 2008, R.S. 14:81.2(E)(1) was amended to provide for a maximum sentence of 99 years instead of life imprisonment when the victim was under the age of 13 at the time of the offense.
In State v. Robinson , 49,821 (La. App. 2 Cir. 5/20/15), 166 So.3d 395, writ denied , 2015-1400 (La. 9/16/16), 206 So.3d 201, the defendant argued the trial court incorrectly denied his motion to reconsider sentence because he was sentenced under the wrong version of R.S. 14:81.2. He also complained that the state failed to prove that his victim was under the age of 13 at the time of the offense and that the jury should have been tasked with making this determination.
Noting that the failure to submit a sentencing factor to a jury is subject to harmless error analysis, this court explained:
The record supports the sentencing of defendant under the enhanced penalty provision enacted in 2006. The indictment charged defendant with molesting T.W. from 2004 to August of 2008. T.W.
*1239 was born on February 2, 1996, which made her 8 to 12 years of age during the time of this ongoing offense. The statute was amended adding the increased penalty in 2006. No evidence was submitted to the contrary. The trial judge expressly recognized this issue, made the calculations based on the testimony presented to the jury and correctly concluded that the state had presented evidence that T.W. was under the age of 13 during the offense, that the amended statute was in effect when the offense was ongoing and, thus, properly sentenced defendant under the amended penalty provision.
Regarding the alleged Apprendi violation, we stated:
The indictment in the present case charged that the molestation of T.W. occurred between 2004 and 2008, that defendant was over the age of 17 and that T.W.'s birthdate was in 1996. Both molestation and indecent behavior carry an enhanced penalty when the victim is under the age of 13. While the written jury charge is not contained in the record, defendant's own brief concedes that the jury was instructed that he was charged with molestation of a juvenile under the age of 13 and that a responsive verdict was indecent behavior with a juvenile under the age of 13. * * * As the trial judge noted prior to imposing sentence, while the finding was not contained on the jury verdict form, the jury necessarily found that T.W. was under the age of 13 at the time of the offense in order to return a verdict of guilty. The indictment and jury charge suffice to satisfy Apprendi and its progeny; however, any potential violation was certainly harmless in light of the indictment, admitted language in the jury charge and the testimony of T.W. regarding the years during which the abuse occurred and her age at the time of the ongoing abuse. State v. Gibson , supra.
State v. Robinson , supra at 401-402.
In State v. Humphries , 48,235 (La. App. 2 Cir. 9/25/13), 124 So.3d 1177, a case with facts closely analogous to this case, the defendant was charged with three counts of aggravated incest of his stepdaughter, in violation of R.S. 14:78.1. Count 1 alleged aggravated incest between January 1, 2000, and December 19, 2008, when the victim was under the age of 13 and related to the defendant as his stepdaughter. Counts 2 and 3 alleged aggravated incest between December 19, 2008, and June 8, 2011, when the victim was under the age of 18 and was his stepdaughter.
After a trial, the jury returned a verdict of guilty on all three counts. As to Count 1, the court sentenced the defendant to 45 years at hard labor without benefits; for the other two counts, the court sentenced him to 16 years for each count. The defendant appealed only as to Count 1, including a claim of excessive sentence. Among the many arguments presented, the defense argued that the sentence was excessive because the court utilized an amended version of R.S. 14:78.1(D), which had been amended during the same time and in the same way as the molestation statute in the instant case.
Count 1 encompassed the time period from January 1, 2000, to December 19, 2008; the victim was under age 13 during this entire period. Prior to August 15, 2006, the range for the offense was 5 to 20 years; the 2006 amendment added an enhanced penalty for victims under age 13 increasing the penalty range to 25 years to life imprisonment with the first 25 years without benefits. A 2008 amendment changed the penalty range to 25 years to 99 years with the first 25 years without benefits. The trial court elected to sentence the defendant under the 2008 version with a sentencing range of 25 to 99 years.
*1240 The defendant argued that it was not clear whether the jury found that the state proved beyond a reasonable doubt that aggravated incest occurred after the 2006 amendment. Due to this alleged uncertainty, he maintained that he should have been sentenced under the pre-amendment version, with the range of 5 to 20 years.
This court rejected this argument and also distinguished State ex rel. Simpkins v. State, 2012-1599 (La. 12/14/12), 102 So.3d 776.[3] Unlike Simpkins, supra , where the evidence at trial demonstrated a one-year hiatus from molestation that included the time between the effective date of the amended statute and the victim's 13th birthday, no such gap existed in Humphries: the victim testified that the acts of aggravated incest never ceased during the 10-year period from age 5 to 15. Additionally, in Simpkins, supra , the defendant's exposure to the enhanced penalty was for 5 months, whereas in Humphries , the defendant was exposed to the enhanced penalty from August 15, 2006, to December 19, 2008, when K.W. turned 13 - 2 year and 4 months of exposure. The court noted that the record contained considerable evidence that the defendant committed aggravated incest between the effective date of the amended statute and when she turned 13. Accordingly, we held that the trial court did not err when it sentenced the defendant pursuant to the enhanced penalty of R.S. 14:78.1(D)(2).
Similarly, in the instant case, the record supports the trial court's decision to sentence Roth pursuant to the 2006 amended version of the statute, or, for that matter, the 2008 amended version. H.M. testified that Roth molested her every time she went to the house, which occurred with regular frequency up until H.M. was 12 years old, according to testimony from her mother, K.W. H.M. would have turned 13 on February 25, 2010. Hence, we find no error by the trial court in sentencing Roth under the 2006 or 2008 amended version of the statute.
Generally, the date and time are not essential elements to prove the offense of molestation of a juvenile, and frequently the state alleges a range of time based upon a traumatized victim's memory of when the act or acts of molestation occurred. See State v. Mickens , 31,737 (La. App. 2 Cir. 3/31/99), 731 So.2d 463, writ denied , 99-1078 (La. 9/24/99), 747 So.2d 1118 ; State v. Dale , supra. In the instant case, the state opted to charge only one count of molestation of a juvenile under the age of 13 despite Roth's continual molestation of H.M. over a period of multiple years. The jury, in rendering its verdict, was required to determine that H.M. was under the age of 13 when the molestation occurred. H.M.'s age at the time of the offense, and not the date of the offense, was the fact that determined the sentencing exposure. State v. Robinson, supra . Accordingly, the indictment and jury charge, both of which listed H.M.'s date of birth, were sufficient to satisfy Apprendi and its progeny.
We also conclude that any potential Apprendi violation was surely harmless. H.M. testified that, beginning when she was seven or eight, and ending when she was 13 or 14, Roth would touch her vagina and breasts, and "make [her] hold his penis." She also testified that sexual encounters occurred "almost every time [she] spent the night" during that period of time. H.M.'s testimony, coupled with Roth's admissions, provided overwhelming *1241 and uncontroverted evidence that he committed molestation of a juvenile under the age of 13 during the time frame of August 15, 2006, to August 14, 2008, when the effective version of R.S. 14:81.2 provided a range of 25 years to life for molestation of a juvenile under the age of 13.
Moreover, the claim that the bill of information was duplicitous was waived when Roth did not raise it in a timely motion to quash. State v. Wilson , 2007-365 (La. App. 3 Cir. 10/3/07), 968 So.2d 776. On this record, had Roth raised the objection, the state could have charged and proven multiple counts of molestation, thereby increasing his sentencing exposure.
For these reasons, the trial court correctly denied the motion for a new trial. Accordingly, this assignment of error lacks merit.
By his second assignment, Roth alleges that the trial court abused its discretion by denying his motion to upset the trial in order to allow substitution of defense counsel. He argues that he was prejudiced by the denial of his motion to continue because his trial attorney committed numerous errors during the trial, including failure to object to the admission of the defendant's confession on grounds that it was the product of coercion and failure to file a motion to quash the allegedly duplicitous bill of information.
The state notes that this trial was originally set for January 25, 2016, but Roth was granted an almost six-month continuance to July 11, 2016. Roth's second motion to continue trial, filed only two weeks before the trial was set to commence, was properly denied given its late filing and the prior continuance.
The record confirms that this case was originally set for trial on January 25, 2016, but Roth's trial attorney, Bobby D. Sutton Sr., requested a continuance on that date; it was granted, and trial reset for July 11, 2016.
On July 6, 2016, Mr. Sutton filed a second motion for continuance, arguing that just the previous day he received the state's notice of its intention to use other crimes evidence at trial, and therefore needed a continuance to prepare a response or defense.
On July 11, 2016, the day trial was scheduled to begin, Mr. Sutton advised that he was unprepared and that Elton Richey had agreed to enroll to represent Roth if the trial court granted his second motion to continue. Mr. Sutton also complained about the state's late notice of its intention to use evidence of other crimes pursuant to La. C.E. art. 412.2. The state opposed the motion for continuance, explaining that the other crimes evidence had been disclosed to the defense in discovery back in 2014. The trial court denied the motion for continuance, explaining:
With respect to the request for a continuance based upon new counsel, Mr. Richey is not present and that is not a grounds for a continuance even if Mr. Richey was present, so that's an insufficient basis. So the motion for continuance based upon new counsel is hereby denied.
After a short recess, the court denied the continuance based on the state's 412.2 notice, finding the notice to be reasonable, especially since the evidence sought to be introduced was provided to the defense in discovery and was also admissible as res gestae evidence. Mr. Richey subsequently filed a motion to enroll as trial counsel on October 24, 2016.
Upon a written motion at any time and after a contradictory hearing, the trial court may grant a continuance, but only upon a showing that such a motion is in the interest of justice. La. C. Cr. P. art. 707 ; State v. Harris, 44,402 (La. App. 2 Cir. 6/24/09), 20 So.3d 1121, writ denied , 2009-2303 (La. 4/23/10), 34 So.3d 271. Additionally, *1242 the court has discretion to grant a timely filed motion for a continuance "in any case if there is good ground therefor." La. C. Cr. P. art. 712. Because the decision to grant or deny a motion for continuance rests within the sound discretion of the trial court, a reviewing court will not disturb the trial court's determination absent a clear abuse of discretion. State v. Free , 48,260 (La. App. 2 Cir. 11/20/13), 127 So.3d 956, writ denied , 2013-2978 (La. 5/30/14), 140 So.3d 1174, and writ denied by , State ex rel. Free v. State , 2014-0039 (La. 9/19/14), 148 So.3d 944. The denial of a motion for continuance on the ground of counsel's lack of preparedness does not warrant a reversal unless counsel demonstrates specific prejudice resulting from the denial or the preparation time is so minimal as to call into question the basic fairness of the proceeding. State v. Thomas , 51,346 (La. App. 2 Cir. 6/21/17), 223 So.3d 759, writ denied , 2017-1264 (La. 3/9/18), 237 So.3d 523.
The Sixth Amendment to the U.S. Constitution, as well as La. Const. art. I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ; State v. Carpenter , 390 So.2d 1296 (La. 1980) ; State v. Shumaker , 40,275 (La. App. 2 Cir. 10/28/05), 914 So.2d 1156.
As a general proposition, a person accused in a criminal trial has the right to counsel of his choice. La. Const. art. I, § 13 ; State v. Leggett , 363 So.2d 434 (La. 1978) ; State v. Anthony , 347 So.2d 483 (La. 1977). The defendant in a criminal trial may not, however, force a postponement by a last-minute change of counsel. State v. Moore , 40,311 (La. App. 2 Cir. 1/13/06), 920 So.2d 334, writ denied , 2006-2267 (La. 6/1/07), 957 So.2d 167 ; State v. Leggett , supra ; State v. Anthony , supra.
The Louisiana Supreme Court has frequently upheld the denial of motions for continuance or withdrawal of counsel made on the day of trial when the defendant is dissatisfied with his present attorney, but had ample opportunity to retain private counsel. State v. Moore, supra ; State v. Leggett , supra ; State v. Anthony , supra. Generally, a reviewing court will not reverse a conviction even on a showing of an improper denial of a motion for a continuance, absent a showing of specific prejudice. State v. Free , supra.
The trial court did not abuse its discretion by denying Roth's motion to continue because granting it was neither in the interest of justice, nor was it necessary to allow preparation for trial. Roth had six months from the date of the granting of his continuance in January to retain Mr. Richey, or other counsel, to represent him. He waited until July 6, 2016, less than a week before his trial was scheduled, to file a motion to continue. As noted by the trial court, Roth was not prejudiced by the state's 412.2 notice because the evidence it sought to introduce at trial was provided in discovery. This case had been pending since 2014, and if Roth was aggrieved by the fact that Mr. Sutton failed to file a motion to quash, he could have retained new counsel long before the date trial was scheduled to begin (for the second time).
Accordingly, this assignment of error lacks merit.
By his third assignment of error, Roth argues that the trial court erred in overruling his objection to Sgt. Moore's testimony regarding his (Roth's) credibility and honesty, which prejudiced his constitutional right to a fair trial. Sgt. Moore testified that during the interrogation he noticed the "neurolinguistics" with Roth's eyes, which indicated he was being deceptive. Roth argues that Sgt. Moore was referring to "neuro-linguistic programming" ("NLP"), a popularized scientific theory from the 1970s that claims certain *1243 eye movements are reliable indicators of when someone is lying. He cites several scientific articles that debunk NLP as pseudoscience. Roth claims that Sgt. Moore's use of "scientific-sounding" terms from NLP to reach the conclusion that his eye movements and body language during his interview indicated deception, tainted the jury's ability to make its own determination as to credibility. Roth also raised this argument in his motion for new trial, and argues that the trial court erred by denying that motion.
The state argues that Sgt. Moore was never qualified as an expert and testified as to his observations, opinions and perceptions in accordance with La. C.E. art. 701.
Sergeant Moore, of the Caddo Parish Sheriff's Office, identified at trial the recording of the defendant's interview, which was played for the jury. He testified that he had conducted over 1,000 interviews during his career in law enforcement. When the prosecutor asked Sgt. Moore to give an opinion as to whether people lie during interviews, defense counsel objected, noting that Sgt. Moore had not been qualified as an expert and that it was improper and prejudicial to allow him, and not the jury, to determine the defendant's credibility. In response, the state argued that Sgt. Moore could give an opinion, based on his years of experience, regarding whether Roth was being evasive during his interview.
The trial court overruled the defendant's objection, explaining, in relevant part:
Certainly a police officer or law enforcement officer can give his professional opinion as to certain aspects of the case. They are to be judged on their credibility as any other witness.
In addition, there are voir dire examination I believe by both the State and defense on whether or not police officers can lie. So it's not a surprise to either the State or the defense, and I believe that the law enforcement officer giving his opinion is in no way a surprise and, of course, it is admissible and permissible as law enforcement officers can give their opinion on their case or why they made an arrest[.]
Thereafter, Sgt. Moore provided his own perceptions of Roth's demeanor during the interview:
A: Well, obviously a lot of times during an interview, as many of you could have seen, he was closed off with his arms folded like that. There were some times during the interview to where it appeared that he showed some emotion, not crying or anything like that, but his arms came down and he put his head down, which would indicate he was showing some type of remorse and emotion. Like I said, those were different things that I saw as his body language, his neurolinguistics with his eyes, the movement of his eyes, the way he would word some things sometimes. The long pauses also indicate deception.
Q: Okay. Did anything else about his body language or the way he paused, did anything indicate to you whether or not he was trying to be evasive at all?
A: Well, I feel with the long pauses that that - usually, a person that's asked a question it's yes, no. And with the long pauses is an indication of deception, they're thinking of an answer to be deceitful.
In State v. Imbraguglio , 08-64 (La. App. 5 Cir. 5/27/08), 987 So.2d 257, the defendant argued that the trial court erred by allowing a law enforcement officer, Sgt. Drury, to give his opinion as to whether the defendant's statements to police were truthful. The appellate panel found no merit to this, stating that Sgt. Drury testified as to his opinion about the truthfulness of defendant's explanations for the *1244 injuries sustained by the victim based on his own personal observations of the defendant throughout the interview process. While "[g]enerally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions, a lay witness is permitted to draw reasonable inferences from their own personal observations, as long as he also states the observed facts." State v. Hubbard , 97-916, p. 16 (La. App. 5 Cir. 1/27/98), 708 So.2d 1099, 1106, writ denied , 98-643 (La. 8/28/98), 723 So.2d 415.
Accordingly, the court concluded that the testimony of a witness in the form of opinions or inferences who is not testifying as an expert is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the testimony or the determination of a fact in issue. La. C.E. art. 701. However, "the opinion rule should not be applied so strictly as to exclude firsthand testimony that may be several inferences removed from raw sense perceptions, yet more helpful to the jury than mere recitation of such perceptions." State v. Casey , 99-0023, p. 12 (La. 1/26/00), 775 So.2d 1022, 1033 (citation omitted), cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
Finally, the court noted that even if the admission was error, it was harmless. "Erroneous admission of evidence requires reversal only where there is a reasonable possibility that the evidence might have contributed to the verdict." State v. Casey , supra at 13, 775 So.2d at 1033. The appellate court must determine whether the error was harmless beyond a reasonable doubt, i.e., whether the guilty verdict actually rendered was unattributable to the error. State v. Imbraguglio, supra at 267.
In this case, Sgt. Moore was a law enforcement officer with almost 14 years of experience who had conducted approximately 1,000 interviews at the time of trial. He based his opinion as to whether Roth was being deceptive during his interview on his personal observations of the subject. Moreover, any error in allowing Sgt. Moore's opinion testimony was undoubtedly harmless. Roth's statement reveals a measure of deception, even without the need for Sgt. Moore's opinion. When the interview began, he denied having any improper involvement with H.M; however, when confronted with H.M.'s accusations, he began to change his story, and eventually admitted to massaging her close to her vagina and having her hold his erect penis.
Accordingly, we find no merit in this assignment.
By his fourth assignment of error, Roth contends that the trial court abused its discretion by imposing an unconstitutionally excessive sentence. His 30-year sentence is excessive, he argues, because he engaged only in "hand-to-genital" contact with H.M., and did not involve more serious sexual behavior or the use of violence. Additionally, Roth is a first-time offender. Drs. Mark Vigen and Jennifer Russell gave their opinion in the motion to reconsider that Roth "falls in the lowest risk category for future offending" based on his background and their assessment using the Sex Offender Risk Appraisal Guide ("SORAG"). Roth notes that he has completed every program available to him while incarcerated, and that, at the age of 53, the 30-year sentence imposed is a near life sentence. He submits that he was entitled to a downward department from the mandatory minimum pursuant to State v. Dorthey , 623 So.2d 1276 (La. 1993).
At the sentencing hearing, Roth made a statement to the trial court expressing remorse for his actions. The court determined that the version of R.S. 14:81.2 applicable during 2006 to 2008 applied to the *1245 defendant. Taking into consideration the facts of the case, the likelihood that Roth would reoffend, and the expression of remorse, the trial court sentenced him to 30 years at hard labor, with the first 25 years to be served without the benefit of probation, parole or suspension of sentence.
Subsequently, Roth filed a "Motion to Correct Illegal Sentence and Motion to Reconsider Sentence on the Grounds of Excessiveness" arguing that the sentence was illegal because of the alleged Apprendi violation, or excessive given the facts of the case. Attached to the motion was the report of Drs. Vigen and Russell, as well as letters written on his behalf by friends and family members. The court denied the motion.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith , 433 So.2d 688 (La. 1983) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 2016-0959 (La. 5/1/17), 219 So.3d 332. Articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos , 419 So.2d 475 (La. 1982) ; State v. DeBerry , supra. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones , 398 So.2d 1049 (La. 1981) ; State v. DeBerry , supra. There is no requirement that specific matters be given any particular weight at sentencing. State v. DeBerry , supra ; State v. Shumaker , 41,547 (La. App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied , 2007-0144 (La. 9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra ; State v. Bonanno , 384 So.2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra.
Neither the Louisiana Legislature nor our jurisprudence provides that a sentence that would, in effect, probably last for the life of a defendant is determinative of a constitutionally excessive sentence. State v. Smith , 50,342 (La. App. 2 Cir. 1/13/16), 184 So.3d 241, 245.
In State v. Johnson , 97-1906 (La. 3/4/98), 709 So.2d 672, the court held that a downward departure from the mandatory minimum habitual offender sentence may be appropriate, but that it is rare and only warranted under exceptional circumstances. In those cases, the sentencing judge must begin with the presumption that the mandatory minimum sentence is constitutional. Id. at 676, citing State v. Dorthey, supra. The court may depart from the minimum sentence only if it finds that the defendant presented "clear and convincing evidence" to rebut the presumption of constitutionality, which requires a showing that "he is exceptional, *1246 which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson , 709 So.2d at 676, quoting State v. Young , 94-1636 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, writ denied , 95-3010 (La. 3/22/96), 669 So.2d 1223 (Plotkin, J., concurring).
From August 15, 2006, to August 14, 2008, R.S. 14:81.2(E)(1) provided a sentence of 25 years to life imprisonment, with at least 25 years without benefits, for the offense of molestation of a juvenile when the victim is under the age of 13. As discussed above, the record supports the trial court's sentencing under this version of R.S. 14:81.2(E)(1). The record also supports the version of R.S. 14:81.2(E)(1) effective after August 15, 2008.
The trial court ordered a PSI report, which the court referenced before imposing sentence, specifically as to the facts of the case, Roth's likelihood to reoffend, and his expression of remorse.
This 30-year sentence, which is on the lower end of the sentencing range, is not constitutionally excessive. Roth utilized his position as his victim's uncle and caretaker to molest her, beginning at a very young age, and continuing for several years until she was at or near age 14. Even though this was his first conviction, the duration of his conduct over nearly 7 years in which numerous instances of molestation occurred render Roth's conduct particularly egregious. The 30-year sentence imposed does not shock the sense of justice.
Accordingly, this assignment of error lacks merit.
In his final assignment of error, Roth complains that the trial court erred by designating his offense as a "crime of violence." In support, he argues that molestation of a juvenile is not inherently a crime of violence because the use of force or violence is not a necessary element of the offense. He concedes that one court has held that molestation is inherently a crime of violence, in State v. Fontenot , 06-226 (La. App. 3 Cir. 7/12/06), 934 So.2d 935. However, he points out that in State v. Brewer , 07-1244 (La. App. 4 Cir. 12/30/08), 2 So.3d 1150, 1158, writ denied , 2009-0251 (La. 10/30/09), 21 So.3d 271, another court noted that "the State agreed with the trial court that molestation of a juvenile did not fit within the definition of a crime of violence." Roth argues that he never exercised force or violence against H.M. in order to carry out the molestation.
The state responds that the trial court's designation of this offense as a crime of violence was correct, noting that H.M. testified that Roth grabbed her hand and forced her to hold his erect penis.
La. R.S. 14:2(B) defines "crime of violence" as follows:
B. In this Code, "crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon. * * *.
The statute then provides an illustrative list of enumerated "crimes of violence." Unlisted offenses may be denominated as crimes of violence under the general definition of the term provided by the statute. State v. Oliphant , 2012-1176 (La. 3/19/13), 113 So.3d 165.
In State v. Fontenot, supra , the Third Circuit upheld the trial court's designation *1247 of the defendant's molestation of a juvenile as a crime of violence, reasoning:
Defendant argues there was no evidence that the crime at issue was violent, because no serious bodily injury occurred. At issue is not whether the present offense was executed in a violent manner, but whether molestation of a juvenile generally, as defined by La. R.S. 14:81.2, is a "crime of violence," as defined by La. R.S. 14:2(13). Molestation is inherently a crime of violence, such as stalking, which is enumerated in La. R.S. 14:2(13). Such crimes are of a genera that is violent in nature. Thus, they are "crimes of violence" even when, in a particular case, the defendant does not inflict serious bodily injury. The elements and nature of the present offense fit the definition given in La. R.S. 14:2(13). Thus, the trial court did not err in this case by finding Defendant committed a crime of violence.
State v. Fontenot , supra at 938.
We find the Third Circuit's reasoning in State v. Fontenot , supra , to be persuasive. Roth used his position of control or supervision to commit an unwanted sexual touching of a young child. H.M. testified that he made her hold his penis. While his crime may not have inflicted serious bodily injury in the traditional sense, the sexual touching involved some use of force against a victim unable to consent due to her youthful age. This finding is consistent with the fact that third degree rape (formerly, simple rape) is listed as a crime of violence. La. R.S. 14:2(B)(11). Furthermore, as in State v. Fontenot , supra, Roth has not demonstrated any negative consequence he has suffered, or will suffer, as the result of the trial court's designation of his crime as a crime of violence.
We conclude that this assignment is without merit.
Finally, we have reviewed the entire record and find nothing we consider to be error patent.
CONCLUSION
For the reasons stated, Richard Allen Roth Jr.'s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

The court mistakenly recited the sentencing range of the later 2008 amendment to the statute. See discussion below in text accompanying note 2.

Before imposing sentence, the trial court found that the version of R.S. 14:81.2 in effect from 2006 to 2008 applied. The court explained:
The Court: All right. So the crimes are - happened over a period of time. And I'm basing my sentence upon the bill of information and the timeframe of the crimes as committed, so it would be the 2006 to 2008 as well as the date of the alleged offense, the law effective at that time.
* * *
Defense Counsel: I just want to be clear for - for -for any reviewing Court as to which timeframe, effective range of the statute that we're dealing with, because that essentially means the Court is finding that the offense occurred during that timeframe: and so that's why I'm trying to be clear on that.
The Court: All Right. All Right. So the sentencing range is 25 to 99 years with a minimum of 25 years without the benefit of parole, probation or suspension of sentence.

The case involved molestation of a juvenile pursuant to R.S. 14:82.2 and whether the defendant could be sentenced pursuant to the 2006 amendment where there was no actual evidence of contact with the victim during the five-month period the defendant was exposed to punishment under this version of the statute.